## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| L.C. YOUNG, as Special Administrator<br>of the Estate of Dan Young, Jr., deceased, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 06 C 6772 |
| v. | ) | Honorable Amy St. Eve |
| | ) | Magistrate Judge Ashman |
| Assistant Cook County State's Attorney | ) | |
| MICHAEL ROGERS, | ) | |
| | ) | |
| Defendant. | ) | JURY TRIAL DEMANDED |

### FIRST AMENDED COMPLAINT

NOW COMES Plaintiff, L.C. YOUNG, as Special Administrator of the ESTATE OF

DAN YOUNG, JR., deceased, by and through his attorneys, KATHLEEN T. ZELLNER

& ASSOCIATES, and in his First Amended Complaint, complaining of Defendant

Assistant Cook County State's Attorney MICHAEL ROGERS, alleges as follows:

### Introduction

1.      Plaintiff Dan Young, Jr., ("Mr. Young"), was falsely arrested and charged with

four counts of first degree murder, three counts of aggravated criminal sexual assault, one

count of kidnapping and one count of arson. Police and prosecutors claimed that he

confessed to committing the brutal and heinous crimes with the assistance of Harold Hill

and Peter Williams.

2.      At the time of his arrest, Mr. Young had a tested IQ of 56, which is considered

mentally retarded, and could not read or write. Additionally, he had a seizure disorder

which further impaired him.

3.      Mr. Young was then prosecuted and convicted on the basis of a statement created

by Defendant Michael Rogers ("Defendant Rogers"). The statement was not created by

Mr. Young. He spent over twelve years in prison because of Defendant Rogers'

statement.

4.      Mr. Young was subsequently exonerated by forensic testing, including DNA

evidence and bite mark evidence.

5.      On January 31, 2005, after having conclusively established his innocence beyond

any question, his wrongful conviction was vacated by agreement with the Cook County

prosecutors, and he was released that day from the Illinois Department of Corrections.

6.      On May 3, 2005, Mr. Young filed a civil rights lawsuit in the Circuit Court of

Cook County against Defendant Rogers.

7.      Mr. Young filed for a pardon. During the review process of Mr. Young's pardon,

there was never any objection filed by the Cook County State's Attorney's Office. They

were in agreement with Mr. Young's request for a pardon based on actual innocence.

8.      Dan Young, Jr. was killed by a hit and run driver in Chicago, Illinois, on April 27,

2006. Shortly thereafter, his brother, L.C. Young, was appointed as Special

Administrator of his Estate in the Circuit Court of Cook County. Dan Young, Jr. is

survived by his mother, as well as seven adult siblings.

9.      On July 3, 2008, Mr. Young received a full pardon, based on actual innocence,

from Illinois governor Rod Blagojevich. Mr. Young was one of four individuals that

received a pardon based on actual innocence out of the nineteen granted pardons that day. Unfortunately, by the time he was pardoned, Mr. Young was deceased.

10.    Mr. Young's wrongful conviction was the direct product of police and prosecutorial misconduct. In particular, Mr. Young was convicted based on the confession fabricated by Defendant Rogers and fabricated forensic evidence.

11.    Mr. Young's false "confession" was improperly bolstered by false and coerced confessions from two other witnesses, one of whom was a teenager, and the other of whom turned out to be locked up in the Cook County Jail at the precise time he was supposedly killing the victim with Mr. Young.

12.    Mr. Young's confession, as well as the other two confessions were proven false by the DNA results and subsequent bite mark analysis.

### Jurisdiction and Venue

13.    This action is brought pursuant to the laws of the State of Illinois, the Illinois Constitution, the United States Constitution and 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights.

14.    The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

15.    Defendant Rogers, at all times herein, was an Assistant Cook County State's Attorney and was acting under color of law.

16.    Defendant Rogers is sued in his individual capacity.

**The Morgan Murder**

17.     In the early morning hours of October 14, 1990, the partially-naked remains of 39 year old Kathy Morgan were discovered by Chicago firefighters amidst a fire in an abandoned building on West Garfield Boulevard in the area of 55th and Bishop.  She had been brutally raped, tortured, strangled and murdered.  The abandoned building had been set on fire in an apparent attempt to conceal evidence.

18.     After the initial processing of the scene, no suspects were arrested. Approximately nineteen months passed without any breaks in the case.  It remained open and unsolved.


**Harold Hill**

19.     Harold Hill ("Mr. Hill") was Mr. Young's co-defendant.  He was 16 years old at the time of the Morgan murder.  He did not know Ms. Morgan, Mr. Young or Peter Williams nor did he have anything whatsoever to do with her murder.

20.     In March of 1992, nineteen months after the Morgan murder, Mr. Hill, then 18 years old, was arrested pursuant to an unrelated charge by Chicago Police officers.

21.     After being transported to the police station, he was handcuffed to the wall by Chicago Police Department officers, who asked Mr. Hill if he had knowledge of any other crimes in the area.

22.     Mr. Hill told the officers that he had heard about a murder in the neighborhood where Kathy Morgan was killed.  The officers began interrogating Mr. Hill, using threats, physical and psychological pressure.

23.     Also participating in Mr. Hill's interrogation was Defendant Rogers, who was at the time acting in a capacity akin to an investigating police officer.

24.     Defendant Rogers exceeded his authority when he then entered the room and demanded a confession from Mr. Hill. Defendant Rogers told Mr. Hill the story of how the crime took place. He explained to Mr. Hill that Mr. Hill and two accomplices had raped, tortured and killed Ms. Morgan, then set the building on fire.

25.     After being advised he had committed the crimes, shown pictures of who the Officers and Defendant Rogers claimed he had committed the crimes with, and after being beaten, due to that deception, trickery, psychological pressure and physical pressure, Mr. Hill agreed to give a statement.

26.     In the statement concocted for Mr. Hill, a series of events was described that involved Mr. Hill, Peter Williams and Mr. Young committing brutal and heinous acts against Ms. Morgan, culminating in killing her and setting the crime scene on fire.

27.     After further interrogation, including threats and other abusive tactics, Mr. Hill gave the officers the names "Junior" and "Black Pete" as his two accomplices.

28.     At the time of Mr. Hill's arrest, there was an individual with the nickname of "Junior" who resided next door to Mr. Young's mother, who lived at 5436 S. Justine, in Chicago, Illinois.

### Plaintiff Dan Young, Jr.

29.     On or about March 22, 1992, Plaintiff Dan Young, Jr. ("Mr. Young") resided at 55th and Halsted in Chicago, Illinois. At that time, Mr. Young had never met and did not know Kathy Morgan, Harold Hill, or Peter Williams.

30.     Mr. Young's IQ of 56 was well below the common benchmark for retardation, and his verbal IQ was only ten points above the lowest score possible.

31.    According to two psychiatrists and a psychologist who examined him, he was unable to state where the sun rises, describe what a "ship" is, count backwards, or subtract 6 from 10.

32.    On March 22, 1992, Mr. Young was walking to his mother's house from his job at Ada S. McKinley School to wash his clothes when Detectives Leonard Kulkula ("Kulkula") and Terry O'Connor ("O'Connor") acted without probable cause, forced him off the street into their car and took him to a Chicago Police Station where they handcuffed him and locked him inside a room.

33.    At that time, Mr. Young was arrested and interrogated by Officers Kulkula and O'Connor, among others, who repeatedly accused Mr. Young of committing the Morgan murder.

34.    When Kulkula and O'Connor's shift ended, Detectives James O'Brien ("O'Brien") and Andrew Christopherson ("Christopherson") took over the interrogation.

35.    Immediately, they began to accuse Mr. Young of the crimes committed against Ms. Morgan.

36.    O'Brien and Christopherson then contacted Defendant Rogers, for he was the Assistant State's Attorney on call and had been involved in the interrogation of and been present for the court reported statement of Harold Hill.

37.    Notwithstanding his obvious mental deficiencies, Mr. Young was interrogated at length without counsel by the officers, as well as Defendant Rogers, acting in a capacity akin to an investigating officer. Defendant Rogers believed the information obtained by Officers Christopherson and O'Brien was insufficient to establish probable cause. He proceeded to re-interrogate Mr. Young with a new approach.

38.    Mr. Young did not understand who Defendant Rogers was and believed that he never spoke to the state's attorney while he was in the interrogation room.

39.    Mr. Young maintained his innocence throughout the entire interrogation.

40.    Defendant Rogers confronted Mr. Young and advised that he knew how the rape and murder of Kathy Morgan took place and that Mr. Young was guilty of the crimes. He was not acting in the capacity of a prosecutor while he was interrogating Mr. Young.

41.    Defendant Rogers exceeded his authority when he prepared a written statement setting forth the Detectives' and his version of how the rape, torture and murder of Kathy Morgan took place, and how Mr. Young was involved and claimed that this written statement was a summary of Mr. Young's own words.

42.    Defendant Rogers claimed to have special knowledge about mentally disabled individuals because of his own personal experiences in working with the handicapped.

43.    This "statement" was a result of fabrication, deception, trickery, psychological and physical pressure applied upon him by the Officers and Defendant Rogers, who had exceeded their authority.

44.    The statement was fabricated by Defendant Rogers, using the coerced confession of Harold Hill as his guideline.

45.    Mr. Young's signature was forged on the back of photographs of Harold Hill and Kathy Morgan.

46.    Mr. Young did not sign each page of Defendant Roger's fabricated statement, though his "signature" showed up on each page.

47.    Dan Young's name was forged on some pages.

48.     On the basis of the "confessions" of Mr. Hill and Mr. Young, the officers proceeded to arrest Mr. Williams, the third individual supposedly involved with them in the murder.

### Peter Williams

49.     Mr. Williams, then 19, was arrested by Chicago Police Officers Boudreau and Halloran without probable cause on March 23, 1992.

50.     He was taken from the street near his home, handcuffed and forced into Officers Boudreau and Halloran's unmarked police car, and transported to a police station at 39th and California, in Chicago, Illinois.

51.     The officers immediately started to accuse Mr. Williams of harming Ms. Morgan, accusations Mr. Williams repeatedly denied.  At one point during their accusations of Mr. Williams, Halloran dry-fired a gun into Mr. Williams' mouth.

52.     After the aforementioned round of verbal and physical abuse, these officers told Mr. Williams he would never be released and they left the room, leaving Mr. Williams handcuffed to the wall.

53.     Upon their return, the officers provided Mr. Williams with their story of how the rape and murder of Ms. Morgan occurred, and the role that Mr. Williams played in the crimes.  They showed him pictures and told him how the pictures fit the story they had concocted.

54.     Mr. Williams denied any involvement, so the officers continued to beat Mr. Williams.  This time, the beatings included the use of a mallet.

55.    The pain from the beatings, psychological and physical pressure as well as the other threats and promises, led to the statement taken from Mr. Williams.

56.    Defendant Rogers took the statement from Mr. Williams and also advised him that he would not be charged with any crimes.

57.    Mr. Williams' resultant false confession mirrored that of Mr. Hill and Mr. Young, likewise indicating that all three of them had raped and then killed Ms. Morgan together, and it contained even more details about the crime.

### The "Confessions" Unravel

58.    Shortly thereafter, Mr. Williams advised that the story that had been concocted would not work because he had been incarcerated at the time of the murder of Ms. Morgan.

59.    Accordingly, Mr. Williams' "confession" indicating that he, Mr. Young and Mr. Hill had all raped and killed Ms. Morgan together, was an impossibility, and would not have been procured but for the Officers and Defendants Rogers' illegal tactics.  In Mr. Williams' words, "by the time [the Officers] were through, I actually thought I did it."

60.    Also false were the confessions by Mr. Hill and Mr. Young wherein they supposedly admitted to raping and killing the victim with Mr. Williams.

61.    Because Mr. Williams could not have committed the crime notwithstanding his signed, court-reported confession, he was never charged for the crime and released without trial.

## Mr. Young's Inability to Comprehend *Miranda*

62.     The State proceeded to prosecute Mr. Hill and Mr. Young.

63.     Mr. Young and Mr. Hill both contemporaneously alleged that their "confessions" had been fabricated and/or coerced, and that they were innocent. Both attempted to suppress their confessions prior to trial, but said motions were denied.

64.     After testing of Mr. Young was performed by two psychologists and one psychiatrist, they all testified that Mr. Young could not understand his *Miranda* rights. These experts believed that regardless of how these rights were explained, regardless of the level of vocabulary used to explain them to him, conceptually Mr. Young was neither able to grasp Miranda nor how it applied to him.

65.     The Court rejected the testimony of these three experts and instead accepted the testimony of Defendant Rogers, who had no formal training in mental ability or IQ testing and very limited experience with mentally handicapped children. Defendant Rogers opined that Mr. Young could understand his *Miranda* rights

66.     These experts all also opined that Mr. Young was fit to stand trial

67.     However, at no time prior to or during trial did Mr. Young's attorney or the Court sua sponte request a fitness hearing be conducted, despite Mr. Young's inability to stay awake during many of the courtroom proceedings as a result of being administered the drug Thorazine.

68.     Defendant Rogers created a "murder memo" describing the events of the interrogation, but left out facts such as Mr. Young would not give a court reported statement because he did not want to give it in front of a woman, among others.

69.     This memorandum, which contradicts much of Defendant Rogers' testimony, was never disclosed until the civil case.

## The "Hickey" Convictions

70.     Following the denial of their motions to suppress their "confessions" in 1994, Mr. Young and Mr. Hill were tried simultaneously (but to separate juries) for the rape, murder and kidnapping of Kathy Morgan and subsequent arson. Both men testified in their own defense that they had nothing to do with the crime notwithstanding their purported confessions.

71.     As a proximate result of the misconduct described above, Mr. Young was wrongfully convicted, as was Mr. Hill. Both men were sentenced to life in prison.

72.     But for the above described misconduct, Mr. Young would not have been prosecuted, much less convicted. The only evidence linking him to this crime was his fabricated confession and the testimony of a forensic dentist named John Kenney, who supposedly specialized in so-called "bite mark" identification.

73.     Dr. John Kenney, Chief Forensic Odontologist for the Cook County Medical Examiner's Office compared measurements and casts of Mr. Young and Mr. Hill's bite openings to the marks found on Ms. Morgan and concluded in his testimony that Mr. Young had caused the bite mark, while Mr. Hill probably caused the "hickey" found on Morgan's body.

74.     In actuality, the bite-mark testimony had no scientific value. The victim's skin had been burned, rendering teeth-mark comparisons inappropriate because heat and fire distort human skin.

75.     At least two experts have since provided sworn testimony debunking the bite-mark testimony in this case.  One of these experts is Dr. Sweet, whose review of the case and report was co-funded and agreed upon by the Cook County State's Attorney's Office in their re-investigation into Dan Young's conviction.

76.     Dr. Kenney himself has subsequently admitted publicly that he had been "pushed" by prosecutors into making his testimony more damning.  In Kenney's words: "Sometimes you say OK to get them to shut up . . . I allowed myself to be pushed."

77.     Mr. Young was also convicted in part based on the coerced incriminating statement given by Mr. Hill.

### The Exoneration

78.     Recent forensic testing conducted in the past few years on all of the physical evidence relating to the Morgan murder excludes Mr. Young and Mr. Hill, as well as Mr. Williams.  This includes testing on the DNA material taken from underneath the victim's fingernails, as well as the hairs found on the victim's body, and at the murder scene.

79.     In fact, DNA testing has revealed a unique genetic profile of two other as-yet unidentified men, presumably the real killers.  Their DNA was found under the victim's fingernails, left there by her attackers as she tried to defend herself.

80.     To his credit, faced with this convincing new evidence of innocence, Richard Devine's Office of the Cook County State's Attorney cooperated with the re-investigation of the case against Mr. Young and Mr. Hill.

81.     As part of this re-investigation, an Assistant State's Attorney from the Cook County State's Attorney's Office re-interviewed Mr. Young and found Mr. Young's statement that he did not kill Kathy Morgan to be credible.

82.     Thereafter, in January of 2005, twelve years after they were sentenced to life in prison, the Cook County prosecutors formally dropped all charges against Mr. Young and Mr. Hill relating to the Morgan murder and Mr. Young was released from custody.


## Count I
### Due Process – 42 U.S.C. § 1983

83.     Each of the paragraphs of this complaint is incorporated as if restated fully herein.

84.     As described more fully above, Defendant Rogers, while acting individually, and in conspiracy, as well as under color of law and within the scope of his employment, deprived Plaintiff of his constitutional right to a fair trial.

85.     In the manner described more fully above, Defendant Rogers withheld exculpatory evidence as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of the Plaintiff. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

86.     Defendant Rogers' misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, a fair appeal thereof, and fair post-conviction proceedings, all in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

87.     As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries including, but not limited to, emotional distress, as is more fully alleged above.

88.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr., deceased, respectfully requests that this Court enter judgment in his favor and against Defendant MICHAEL ROGERS awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendant in his individual capacity, as well as any other relief this Court deems just and appropriate.

## Count II
### Section 1983 Conspiracy to Deprive Constitutional Rights

89.     Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

90.     After the Morgan murder, Defendant Rogers and other individuals reached an agreement amongst themselves to frame Plaintiff for the crime and to thereby deprive Plaintiff of his constitutional rights all as described in the various paragraphs of this Complaint.

91.     Independently, before and after Plaintiff's convictions, Defendant Rogers further conspired, and continues to conspire, to deprive Plaintiff of exculpatory materials to which he was lawfully entitled and which would have led to his more timely exoneration of the false charges as described in the various paragraphs of this Complaint.

92.     In this manner, the Defendant Rogers, acting in concert with other known co-conspirators, including persons who are not members of the Chicago Police Department,

have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

93.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

94.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

95.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr., deceased, respectfully requests that this Court enter judgment in his favor and against Defendant MICHAEL ROGERS, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendant in his individual capacities, as well as any other relief this Court deems just and appropriate.

## Count III
## Denial of Access to Courts– 42 U.S.C. § 1983

97.    Each of the paragraphs of this complaint is incorporated as if restated fully herein.

98.    In the manner described more fully herein, Defendant Rogers denied Plaintiff the right to access to courts by his wrongful suppression and destruction of information and evidence which deprived Plaintiff of constitutional claims against potential defendants.

99.    Other claims were diminished by the passage of years and the accompanying erosion of evidence necessary to prove these claims against this Defendant.

100.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr., deceased, respectfully requests that this Court enter judgment in his favor and against Defendant MICHAEL ROGERS awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendant in his individual capacity, as well as any other relief this Court deems just and appropriate.

### Count IV
### Malicious Prosecution – Illinois claim

101.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

102.    Defendant Rogers individually, jointly and in conspiracy, *inter alia*, by constructing, coercing, manipulating, fabricating and altering the evidence against the Plaintiff, and by deceiving the prosecutors who prosecuted Plaintiff's case, initiated a malicious prosecution without probable cause against the Plaintiff and continued said prosecution, again, without probable cause.

103.    Said prosecution was ultimately terminated in Plaintiff's favor with a pardon on the grounds of actual innocence.

104.    The Defendant's actions were done in a willful and wanton manner, in excess of his authority, and directly and proximately caused the injury and damage to Plaintiff set forth above.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr., deceased, respectfully requests that this Court enter judgment in his favor and against Defendant MICHAEL ROGERS awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendant in his individual capacity, as well as any other relief this Court deems just and appropriate.

## Count V
## Intentional Infliction of Emotional Distress – Illinois claim

105.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

106.    Defendant Rogers individually, jointly and in conspiracy, *inter alia*, by constructing, coercing, manipulating, fabricating and altering the evidence against the Plaintiff, and by procuring Plaintiff's prosecution, conviction, life sentence and imprisonment of heinous crimes he did not commit, engaged in extreme and outrageous conduct in excess of his authority.

107.    Defendant intended, by subjecting Plaintiff to such humiliating, degrading conduct, to inflict severe emotional distress on Plaintiff, and knew that his conduct would cause Plaintiff and his family severe emotional distress.

108.    As a direct and proximate result of the Defendants' outrageous conduct, Plaintiff and his family, as previously described in paragraph eight, were injured and experienced severe emotional distress, including nightmares, sleep disruption, symptoms of post traumatic stress disorder, mistrust of the legal system, anxiety, depression and inability to focus or concentrate.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr.,

deceased, respectfully requests that this Court enter judgment in his favor and against

Defendant MICHAEL ROGERS awarding compensatory damages, costs, and attorneys'

fees, as well as any other relief this Court deems just and appropriate.

### Count VI
### Conspiracy – Illinois claim

109.    Each of the paragraphs of this Complaint is incorporated as if restated fully

herein.

110.    Defendant, with other un-sued co-conspirators, and other police and prosecutorial

investigative, supervisory, and command personnel, together reached an understanding,

engaged in a course of conduct, and otherwise jointly acted and/or conspired among and

between themselves to maliciously prosecute and/or continue said prosecution, and to

intentionally inflict severe emotional distress upon Plaintiff.

111.    In furtherance of this conspiracy or conspiracies, Defendant, together with his un-

sued co-conspirators, committed the overt acts set forth above in excess of their authority.

112.    Said conspiracy (ies) and overt acts were and are continuing in nature.

113.    Defendant and his co-conspirators' overt acts, as set forth above, were in excess

of their authority, which were committed jointly and/or while conspiring together to

maliciously prosecute and intentionally inflict emotional distress on the Plaintiff, were

illegal, unconstitutional and constitute the tort of conspiracy as set forth above.


WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr.,

deceased, respectfully requests that this Court enter judgment in his favor and against

Defendant, MICHAEL ROGERS, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against the individual defendant in his individual capacities, as well as any other relief this Court deems just and appropriate.

## Count VII
### Res Ipsa Loquitor – Illinois claim

114.    Each of the paragraphs of this Complaint is incorporated as if restated fully herein.

115.    Dan Young, Jr. was convicted on the basis of his confession.

116.    Dan Young, Jr., is actually innocent as demonstrated by DNA and other forensic evidence.

117.    Therefore, the confession, handwritten by Defendant Rogers, must have been fabricated by Defendant Rogers.

118.    Defendant Rogers' fabricated statement proximately caused Mr. Young's false conviction.

119.    Any facts that the Defendant Rogers would try to offer to indicate a voluntary and credible confession would be refuted by the DNA and forensic evidence. Because no sane person would purposely confess to a crime they did not commit. The State presented no evidence that Dan Young had mental illness that would cause him to compulsively confess to a crime he did not commit.

120.    In light of the fact that Dan Young's confession has been proven demonstrably false, the information in the confession must have been created by Defendant Rogers who created the fictitious confession that matched the other false confessions of Harold Hill and Peter Williams.

121.    Knowing Dan Young was mentally vulnerable, Defendant Rogers believed his

own testimony would be more credible than Dan Young's

122.    Defendant Rogers fabricated the confession mostly outside the presence of Dan

Young.

WHEREFORE, Plaintiff, L.C. YOUNG, as administrator of the Estate of Dan Young, Jr.,

deceased, respectfully requests that this Court enter judgment in his favor and against

Defendant MICHAEL ROGERS awarding compensatory damages, costs, and attorneys'

fees, along with punitive damages against the individual defendant in his individual

capacities, as well as any other relief this Court deems just and appropriate.

Respectfully Submitted,

Kathleen T. Zellner

KATHLEEN T. ZELLNER & ASSOCIATES
2215 York Road
Suite 504
Oak Brook, Illinois 60523
(630)955-1212



State of Illinois
Executive Department

**TO: Circuit Clerk, Cook County, Cook County, Illinois:**

Whereas, **DANIEL YOUNG, JR.** was convicted of the crime of **Aggravated Criminal Sexual Assault; Murder, Case # 92 CR 834402** in the **Criminal** Court of **Cook** County and was sentenced **November 28, 1994 to 18 Years; Natural Life,** Whereas, it has been represented to me that **DANIEL YOUNG, JR.** is a fit and proper subject to Executive Clemency.

Now, Know Ye, that I, ROD R. BLAGOJEVICH, Governor of the State of Illinois, by virtue of the authority vested in me by the Constitution of the State, do by these presents:

PARDON

**DANIEL YOUNG, JR.**

of the said crime of which convicted, and **DANIEL YOUNG, JR.** is hereby acquitted and discharged of and from all further imprisonment and restored to all the rights of citizenship which may have been forfeited by the conviction.

**Grant Pardon Based On Innocence With Order Permitting Expungement Under The Provisions Of 20 ILCS 2630/5.**

**DATED: July 3, 2008**

ROD R. BLAGOJEVICH
GOVERNOR

By the Governor:

JESSE WHITE
SECRETARY OF STATE

PLAINTIFF'S
EXHIBIT