**IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

HAROLD HILL,                          )
                                      )
         Plaintiff,              )
                                      )     Case No. 06 C 6772
         v.                      )
                                      )
CITY OF CHICAGO, et al.,              )
                                      )
         Defendants.             )

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

On January 30, 2007, Plaintiff Harold Hill filed an eleven-count Amended Complaint

against the City of Chicago and present and former Chicago Police Officers in the Violent

Crimes Division at Area 3, including Kenneth Boudreau, John Halloran, James O'Brien, Andrew

Christopherson, Daniel McWeeny, Michael Kill, William Moser, and John Paladino (the "City

Defendants"), as well as Cook County Assistant State's Attorney Michael Rogers.  At this stage

of the litigation, the following counts remain:  (1) Hill's due process claim (Count I); (2) his

Fifth Amendment coerced confession claim (Count IV); (3) two conspiracy claims (Counts VII

and VIII); and (4) his failure to intervene claim (Count X).[1]  Before the Court are Defendants'

Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  For the

following reasons, the Court grants in part and denies in part Defendants' motions.  Specifically,

Hill's Fifth Amendment coerced confession claim in Count IV– as well as his Section 1983

conspiracy claim based on his coerced confession claim in Count VIII – as alleged against

---

[1]  Hill voluntarily dismisses his equal protection claim as alleged in Count VI of his
Amended Complaint.  (*See* R. 310-1, Pl.'s Corrected Omnibus Resp., at 2 n.1.)

Defendants Boudreau, Halloran, and Rogers survive summary judgment. Also, Hill's failure to intervene claim based on his coerced confession as alleged against Halloran and Boudreau in Count X also survives summary judgment. Issues of fact remain with respect to each of these claims.

## **BACKGROUND**

### I. **Introduction**

On October 14, 1990, Kathy Morgan was killed and left in an abandoned building in Chicago, Illinois. (R. 275-1, Pl.'s Rule 56.1 Stmt. Add'l Facts ¶ 1; R. 224-1, Rogers' Rule 56.1 Stmt. Facts ¶ 1.) The building and Morgan's body were set on fire in an apparent attempt to hide the crime. (Pl.'s Stmt. Facts ¶ 1.) On March 20, 1992, Hill was 18-years-old and is presently a 34-year-old resident of Chicago. (*Id.* ¶ 2; R. 231-1, City Def.'s Rule 56.1 Stmt. Facts ¶ 1.) Defendants Boudreau, Halloran, O'Brien, Kill, Christophersen, McWeeny, Moser, and Paladino were homicide detectives in the Chicago Police Department's Area 3 Violent Crimes Division at the time of the Morgan homicide in October 1990. (City Defs.' Stmt. Facts ¶ 2.) These Detectives were also in Area 3 at the time that Hill was taken into custody in relation to the Morgan homicide in March 1992, except for Defendant Kill. (*Id.* ¶¶ 2, 3.) Defendant City of Chicago is a municipal corporation that employs or employed Defendant Detectives. (*Id.* ¶ 6.) Defendant Rogers was a Cook County Assistant State's Attorney assigned to the Felony Review Unit in March 1992. (*Id.* ¶ 4; Rogers' Stmt. Facts ¶ 8.)

### II. **The Morgan Investigation**

On October 14, 1990, Chicago firefighters found Morgan's body in an abandoned building on West Garfield Boulevard in Chicago. (*Id.* ¶ 8.) Detectives Kill and McWeeny

investigated the scene of the Morgan homicide; viewed the body; supervised collection of the evidence; conducted a canvass of the area; interviewed the first officers on the scene; spoke with witnesses and/or bystanders; spoke with family members; debriefed the detectives handling the homicide; and prepared reports regarding their investigation. (*Id.* ¶ 9.) Detectives Moser and Paladino continued the Morgan homicide investigation by going to the medical examiner's office to discuss the preliminary findings regarding Morgan's death. (*Id.* ¶ 10.) Thereafter, Moser and Paldino interviewed the victim's family members, including her father, her ex-husband, and her son, and also visited the crime scene to find additional evidence. (*Id.*) Moser and Paladino prepared police reports regarding their investigation. (*Id.*)

### III.    Hill's Arrest

In the late evening hours of March 20, 1992, two Chicago police officers arrested Hill for possession of a stolen automobile and possession of a handgun. (*Id.* ¶ 13; Rogers' Stmt. Facts ¶¶ 16, 17.) Hill was then transported to the Seventh District Police Station at 61st Street and Racine Avenue in Chicago. (City Defs.' Stmt. Facts ¶ 13.) Hill then admitted to committing two armed robberies – one in Chicago and one in Oak Lawn, Illinois. (*Id.* ¶ 14; Rogers' Stmt. Facts. ¶ 18.)

During the follow-up investigation of the Chicago armed robbery, Hill participated in a line-up at the Area 3 Station at 39th Street and California Avenue on March 21, 1992. (City Def.'s Stmt. Facts ¶ 15; Rogers' Stmt. Facts ¶ 23.) Detectives Boudreau and Halloran participated in conducting the line-up. (City Defs.' Stmt. Facts ¶ 15.) Boudreau and Halloran also asked Hill about other crimes, and Hill indicated that he had knowledge of the Morgan homicide. (*Id.* ¶ 16; Rogers' Stmt. Facts ¶ 25.) Twenty-six hours after his arrest, Hill gave a court-reported statement implicating himself and two other men, Dan Young and Peter Williams,

in the Morgan crimes. (City Defs.' Stmt. Facts ¶ 18; Rogers' Stmt. Facts ¶ 7; Pl.'s Stmt. Facts ¶ 26.) Hill maintains that Boudreau and Halloran, along with Assistant State's Attorney Rogers, coerced his confession. (Pl.'s Stmt. Facts ¶¶ 7-23.) Further, Hill contends that Boudreau, Halloran, and Rogers coerced Williams' confession, although it was later confirmed that Williams was incarcerated at Cook County Jail on the day of Morgan's homicide. (*Id.* ¶¶ 31-36.)

## IV.    Hill's Criminal Case

Hill's criminal case commenced on March 22, 1992 with a probable cause to detain and bond hearing in the Circuit Court of Cook County. (City Def.'s Stmt. Facts ¶ 29.) On April 13, 1992, Hill was indicted. (*Id.* ¶ 30.) In September 1994, Hill and his co-defendant Dan Young were tried simultaneously – but to separate juries – for Morgan's sexual assault and homicide. (*Id.* ¶ 34.) Hill's confession was introduced as evidence against him during his trial. (*Id.* ¶ 55.) In addition, both Hill and Young testified at trial, maintaining their innocence and asserting that law enforcement coerced them into giving their confessions. (*Id.* ¶ 48.) In September 1994, the juries convicted Hill and Young for Morgan's sexual assault and homicide. (*Id.* ¶ 58; Rogers' Stmt. Facts ¶ 7.) Over a decade later, DNA evidence exonerated Hill and Young after which their convictions were vacated by agreement with the Cook County State's Attorneys' Office.[2] (Pl.'s Stmt. Facts ¶ 62; R. 50-1, Amend. Compl. ¶ 2.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to

---

[2] On February 21, 2007, the Court granted Defendants' motion to reassign Dan Young's 42 U.S.C. § 1983 case to this matter based on relatedness. (R. 62-1.) Young settled with the City Defendants and the Court granted Defendant Rogers' Motion for Summary Judgment on December 15, 2008. (R. 301-1.) As such, Young's claims are no longer at issue in this lawsuit.

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quoting Fed.R.Civ.P. 56(e)). At summary judgment, the "court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* 528 F.3d 508, 512 (7th Cir. 2008).

## ANALYSIS

### I.      Due Process Claim – Count I

First, Hill contends that the City Defendants jointly withheld evidence of their investigation into the Morgan homicide in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In *Brady*, "the Supreme Court held that the right to due process and a fair trial requires that the prosecutor turn over to the defense all potentially

exculpatory evidence. That obligation extends to police officers, insofar as they must turn over potentially exculpatory evidence when they turn over investigative files to the prosecution." *Harris v. Kuba,* 486 F.3d 1010, 1014 (7th Cir. 2007); *see also Newsome v. McCabe,* 256 F.3d 747, 752 (7th Cir. 2001). To establish that the City Defendants violated his due process right to a fair trial by deliberately withholding exculpatory evidence, Hill must show: "(1) the evidence at issue is favorable to the accused, either being exculpatory or impeaching; (2) the evidence must have been suppressed by the government, either willfully or inadvertently; and (3) there is a reasonable probability that prejudice ensued – in other words, "materiality." *Carvajal v. Dominguez,* 542 F.3d 561, 566-67 (7th Cir. 2008) (citation omitted); *see also Harris,* 486 F.3d at 1014. "Evidence is 'suppressed' when (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *Carvajal,* 542 F.3d at 567.

Hill maintains that the City Defendants concealed exculpatory evidence pursuant to the "street files" practice. Specifically, Hill argues that the practice of withholding "street files," namely – the unofficial files that may contain the detectives' notes or witnesses' statements – is not uncommon within the Chicago Police Department. *See Jones v. City of Chicago,* 856 F.32d 985, 989 (7th Cir. 1988) ("street files ... were files that the police did not turn over to the state's attorney's office as they did with their regular investigative files"); *see also Palmer v. City of Chicago,* 562 F.Supp. 1067, 1069-74 (N.D. Ill. 1983), *rev'd in part,* 755 F.2d 560 (7th Cir. 1985) (street files "comprise documents usually prepared contemporaneously with the obtaining of the information."). In support of his *Brady* claim, Hill specifically argues that pursuant to the street files practice, the City Defendants cleansed his official file of any references to other suspects to

the Morgan crimes and that evidence of an alternative suspect was crucial to his defense.[3]  Hill

contends that missing from his official file was the Rapid Access Management Information

System ("RAMIS") report that Detective Stanley Kroll may have created concerning the sex

offenders in the area where the Morgan crimes took place.  (Pl.'s Stmt. Facts ¶¶ 48, 52.)

Moreover, Hill maintains that the City Defendants did not turn over a police investigation report

into the victim's boyfriend, Perry Turner, even though Detective Boudreau spoke with Turner on

the night of the crimes.  (*Id*. ¶ 55.)

The City Defendants, on the other hand, argue that Hill has not established that the

RAMIS report or a follow-up investigation report into the victim's boyfriend actually existed in

the first instance.  *See United States v. Warren,* 454 F.3d 752, 759 (7th Cir. 2006) (no *Brady*

violation because defendant was "unable to point to any specific evidence, exculpatory or

otherwise, withheld by the government."); *United States v. Price,* 418 F.3d 771, 785 (7th Cir.

2005) (*Brady* violation did not occur where no document existed corroborating defendant's

claim).  In other words, the City Defendants argue that if there is no proof of a document's

existence, governmental officials cannot be held liable under *Brady*.  *See United States v.*

*Sanchez*, 251 F.3d 598, 603 (7th Cir. 2001).  The Court agrees.

Indeed, Hill admits that there is no direct evidence that these documents were "buried"

by the City Defendants, but he argues that he is entitled to rely upon circumstantial proof to

establish his *Brady* claim.  As Hill explains, he "has produced evidence supporting the inference

---

[3]  Hill brings his due process claim against the City Defendants, but not against Cook
County Assistant State's Attorney Rogers.  (*See* R. 310-1, Pl.'s Corrected Omnibus Resp., at 18-
26; Pl.'s Stmt. Facts ¶¶ 48-60.)  In addition, the Court stayed discovery into the City's alleged
"street files" practice on May 17, 2007, and thus Hill's *Monell* claim against the City is not at
issue in the present summary judgment motions.  (R. 108-1.)

that Defendants would have taken key steps, such as questioning sex offenders in the area listed in the [sic] and corroborating Turner's alibi, yet the resulting documentation was never produced during the criminal process."  (Pl.'s Corrected Omnibus Resp., at 24.)  Hill's mere speculation that a RAMIS report and report concerning Turner may have existed, however, cannot be the basis for his *Brady* claim.  *See United States v. Roberts,* 534 F.3d 560, 572 (7th Cir. 2008) ("defendant must provide some evidence other than mere speculation or conjecture that evidence was exculpatory and suppressed by the Government") (citation omitted); *United States v. Parks,* 100 F.3d 1300, 1307 (7th Cir. 1996) ("speculation is not enough to establish that the Government has hidden evidence").  Moreover, assuming that the RAMIS and Turner reports did exist, it is unclear how this evidence would be exculpatory or impeaching.  *See Warren,* 454 F.3d at 759; *see also Carvajal,* 542 F.3d at 566.  In other words, without proof of the reports and their content, the Court has no way of knowing whether the RAMIS report would have revealed that there were other suspects in the area at the time of the Morgan crimes or if the Turner report concluded that Turner or someone else was a suspect to the Morgan crimes, as Hill suggests.

Further, Hill asserts that the supplemental police report regarding Williams' confession to the Morgan crimes was missing from the official police file, although Hill admits that this report was submitted two months after Williams confessed – well before Hill's trial in September 1994. (Pl.'s Stmt. Facts ¶ 58; R. 306-1, City Defs.' Resp. ¶ 58.)  In fact, evidence in the record reveals that the Williams' supplemental report was turned over to Hill's defense attorneys and was in the Public Defender's files and State's Attorney's files that were produced pursuant to a subpoena in the present lawsuit.  (City Defs.' Resp. ¶ 58.)  Because the government disclosed the Williams' supplemental report in time for Hill to make use of it at his trial, this evidence was not

"suppressed" under *Brady*. *See Carvajal,* 542 F.3d at 567.

Finally, Hill fails to set forth evidence creating a genuine issue of material fact for trial that any of the individual Defendants were personally involved in violating his *Brady* rights. (*See* Pl.'s Stmt. Facts ¶¶ 48-60.) As the Seventh Circuit instructs, "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996); *see also Grieveson v. Anderson,* 538 F.3d 763, 776 (7th Cir. 2008) ("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions.") (citations omitted); *Levy v. Pappas,* 510 F.3d 755, 763 (7th Cir. 2007) ("In a § 1983 action, liability cannot attach against an individual defendant unless 'the individual defendant caused or participated in a constitutional deprivation.'") (citation omitted). Because Hill has failed to point to evidence showing that any of the City Defendants individually caused or participated in the deprivation of his *Brady* rights, this claim must fail.

Construing the facts and all reasonable inferences in Hill's favor, he has failed to set forth evidence creating a genuine issue of material fact for trial regarding his *Brady* claim. Because Hill has failed to establish that the City Defendants violated his due process rights under *Brady*, the Court need not address the police officers' qualified immunity defense. *See Williams v. Rodriguez,* 509 F.3d 392, 398 (7th Cir. 2007). The Court thereby grants the City Defendants' summary judgment motion as to Count I of the Amended Complaint.

## II. Fifth Amendment Coerced Confession Claim – Count IV

In Count IV of his Amended Complaint, Hill maintains that the City Defendants and

Assistant State's Attorney Rogers coerced his confession to the Morgan crimes in violation of his Fifth Amendment right against compelled self-incrimination. *See Chavez v. Martinez,* 538 U.S. 760, 767, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality opinion); *id.* at 778 (Souter, J., concurring in judgment); *Sornberger v. City of Knoxville,* 434 F.3d 1006, 1024 (7th Cir. 2006).

Here, the City Defendants admit that "the underlying facts regarding Hill's confession, including his guilt, are in dispute." (R. 307-1, City Defs.' Reply Brief, at 1.) Rogers, on the other hand, makes no such admission. Nevertheless, the City Defendants contend that because it is undisputed that Defendants Christophersen, O'Brien, McWeeny, Kill, Moser, and Paladino had no contact or interaction with Hill during his arrest and interrogation, (*see* City Def.'s Stmt. Facts ¶¶ 17, 20, 21), these Defendants had no personal involvement in the alleged Fifth Amendment deprivation. *See Grieveson,* 538 F.3d at 776; *Levy,* 510 F.3d at 763. The Court agrees and dismisses Christophersen, O'Brien, McWeeny, Kill, Moser, and Paladino as Defendants from Count IV of the Amended Complaint.

The City Defendants also argue that Hill's Fifth Amendment coerced confession claim is untimely even though the Court previously concluded otherwise in its May 10, 2007, Memorandum, Opinion, and Order granting in part and denying in part the City Defendants' Joint Motion to Dismiss.[4] Specifically, the Court concluded that based on *Heck v. Humphrey,* 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), Hill's coerced confession claim did not accrue until his criminal conviction was vacated in January 2005, and thus his Complaint filed on December 7, 2006 was within the two-year limitations period. *See Dominguez v.*

---

[4] Because Rogers failed to bring a statute of limitations affirmative defense in his Answer to the Amended Complaint (R. 63-1), he has waived this defense. *See Walker v. Sheahan,* 526 F.3d 973, 979 (7th Cir. 2008).

*Hendley,* 545 F.3d 585, 588 (7th Cir. 2008) (for Section 1983 actions, federal courts sitting in Illinois borrow Illinois' two-year personal injury statute of limitations). Now, the City Defendants argue that *Heck* does not apply because Hill's coerced confession did not impugn his underlying criminal conviction. To clarify, the "broad rule of *Heck* is that a plaintiff convicted of a crime in state court cannot bring a § 1983 claim which, if successful, would imply that his conviction was invalid, unless and until the conviction has been reversed on appeal or otherwise invalidated." *Reynolds v. Jamison,* 488 F.3d 756, 766-67 (7th Cir. 2007).

The record reveals that the vast majority of the evidence presented at trial concerned Hill's and his co-defendant's confessions. (*See* City Defs.' Stmt. Facts ¶¶ 51, 52, 53, 55.) In fact, although the City Defendants argue that Hill's conviction is supported by other evidence, they fail to identify any such evidence in the record. As such, because Hill's allegedly coerced confession was the basis for his conviction, his Fifth Amendment claim implicates the invalidity of his underlying conviction. *See Cannon v. Burge*, No. 05 C 2191, 2006 WL 273544, at *9 (N.D. Ill. Feb. 2, 2006); *see also Walden v. City of Chicago,* 391 F.Supp.2d 660, 675 (N.D. Ill. 2005) ("Since Plaintiff's well-pleaded complaint contains allegations sufficient to conclude that his conviction was based primarily on his coerced confession and alleged acts directly related to it," plaintiff could not have challenged his "coerced interrogation without impugning his conviction."); *Orange v. Burge,* No. 04 C 0168, 2005 WL 742641, at *7 (N.D. Ill. Mar. 30, 2005) ("An evaluation of Orange's § 1983 claim in the 1980s, as presented by Orange in his complaint, would have forced the evaluating court to directly determine whether his conviction was invalid. That was an action a district court could not take under *Heck* until Orange's conviction was voided by Governor Ryan's pardon on January 10, 2003."); *Howard v. City of*

*Chicago,* No. 03 C 8481, 2004 WL 2397281, at *7 (N.D. Ill. Oct. 25, 2004) ("Since Howard's

conviction rested almost entirely on his involuntary confession plus the alleged coerced witness

testimony, we conclude that Howard could not have challenged Defendants' acts of torturing

him and fabricating his confession without necessarily implying the invalidity of his

conviction."); *Patterson v. Burge,* 328 F.Supp.2d 878, 897 (N.D. Ill. 2004) ("Since Patterson's

conviction rested almost entirely on his involuntary confession, and at most on his involuntary

confession plus the coerced testimony of a 16 year-old girl, the court concludes that Patterson

could not have challenged defendants' act of torturing him and fabricating his confession

without necessarily implying the invalidity of his conviction.").  Because Hill's Fifth

Amendment coerced confession impugns his underlying conviction, this claim is timely.  *See*

*Heck,* 512 U.S. at 487.

  Meanwhile, because the City Defendants admit that the underlying facts regarding Hill's

confession are in dispute – and do not argue otherwise in their summary judgment briefs –

Detectives Boudreau and Halloran remain Defendants to this claim.  *See Steen v. Myers,* 486

F.3d 1017, 1020 (7th Cir. 2007) (absence of discussion in briefs amounts to abandonment of

claim).  The Court thus turns to the material facts underlying Assistant State's Attorney Rogers'

involvement in the allegedly coerced confession to determine if there is a genuine issue of fact

for trial regarding Hill's Fifth Amendment claim against Rogers.

  In support of his argument that Rogers took part in coercing his confession, Hill points to

his own deposition testimony in which he stated that after Detectives Boudreau and Halloran

pressured him into confessing to the Morgan crimes, he told them he would confess, but did not

do so before he met Rogers shortly after the detectives' interrogation.  (Pl.'s Stmt. Facts ¶ 17.)

Hill further testified that when he met Rogers, he told him that he did not want to confess and that he did not commit the murder. (*Id.* ¶ 18.) Also, Hill testified that Rogers, as well as Boudreau and Halloran, gave him details about the murder, to which he later confessed. (*Id.* ¶¶ 19, 20, 21.) Moreover, Hill testified that when Rogers returned to the interrogation room later that night, Rogers told Hill that he was going to do "the story." (*Id.* ¶ 22.) Thereafter, Rogers told Hill additional details of the Morgan murder and then Hill agreed to give a court-reported statement in which Hill highlighted these details with Rogers' assistance. (*Id.* ¶¶ 22, 23.) Rogers denies these statements.

Viewing this evidence and all reasonable inferences in Hill's favor – as the Court is required to do at this procedural posture – Hill has presented sufficient evidence creating a genuine issue of material fact for trial that Rogers was personally involved in coercing Hill's confession to the Morgan homicide and sexual assault. At summary judgment, it is not the Court's role to weigh the evidence on this issue – which consists mainly of Hill's and Rogers' deposition testimony – or judge its credibility. *See National Athletic Sportswear, Inc.,* 528 F.3d at 512. Instead, the Court must determine whether genuine issues of fact exist for trial and, as discussed, such factual issues exist.

Next, Defendants argue that they are protected by qualified immunity, which shields government officers performing discretionary functions from civil litigation. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Pearson v. Callahan*, ___ S.Ct. ___, 2009 WL 128768 (Jan. 21, 2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when

they perform their duties reasonably." *Pearson,* 2009 WL 128768, at *6. To that end, "[q]ualified immunity protects government officials from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Viilo v. Eyre,* 547 F.3d 707, 709 (7th Cir. 2008) (quoting *Harlow*, 457 U.S. at 818). When determining whether qualified immunity shields a public official from a Section 1983 action, the Court undertakes a two-part inquiry. *See Phelan v. Village of Lyons,* 531 F.3d 484, 487 (7th Cir. 2008) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). One inquiry is whether the facts, viewed in the light most favorable to Hill, show that Defendants' conduct violated a constitutional right. *See Carvajal,* 542 F.3d at 566; *Phelan,* 531 F.3d at 487. The Court's other inquiry is whether the constitutional right "was firmly established at the time of the alleged injury, such that a reasonable officer would understand that his actions are in violation of that right." *Mannoia v. Farrow,* 476 F.3d 453, 457 (7th Cir. 2007). "If either of these prongs is not satisfied, then the individual is entitled to qualified immunity." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1090 (7th Cir. 2008).

Because Hill has presented evidence raising a genuine issue of material fact for trial concerning his Fifth Amendment coerced confession claim, he has established the first qualified immunity requirement. *See Phelan*, 531 F.3d at 487. Thus, the Court turns to the other qualified immunity requirement, namely, whether these rights were clearly established at the time of the alleged constitutional violation.

A defendant's constitutional right not to have a coerced confession used against him at his criminal trial was clearly established at the time of Hill's confession in 1992 and his criminal trial in 1994. Specifically, based on a 1936 Supreme Court case, the *Chavez* Court recognized

that "[s]tatements compelled by police interrogations of course may not be used against a defendant at trial, *see Brown v. Mississippi,* 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682 (1936), but it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *Chavez,* 538 U.S. at 767 (citing *United States v. Verdugo-Urquidez,* 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990)); *see also Bram v. United States,* 168 U.S. 532, 542, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (voluntariness test "is controlled by that portion of the Fifth Amendment ... commanding that no person 'shall be compelled in any criminal case to be a witness against himself'"). Moreover, under the circumstances, a reasonable public official interrogating a criminal suspect would have recognized that coercing a confession by abusive language and physical contact, along with coaching the suspect as to the details of the confession, clearly violates the suspect's constitutional right against self-incrimination. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Lee v. Young,* 533 F.3d 505, 512 (7th Cir. 2008) ("A plaintiff must show, on some level, that a violation of this right has been found in factually similar cases, or that the violation was so clear that a government official would have known that his actions violated the plaintiff's rights even in the absence of a factually similar case."). Therefore, Defendants are not protected by qualified immunity as to Hill's Fifth Amendment coerced confession claim.

Accordingly, the Court grants in part and denies in part Defendants' summary judgment motions as to Hill's coerced confession claim in Count IV of the Amended Complaint. More specifically, Boudreau, Halloran, and Rogers remain Defendants to this claim.

## III.    Conspiracy Claims –  Counts VII and VIII

### A.    Conspiracy Claim under 42 U.S.C. § 1985(3) – Count VII

In Count VII of his Amended Complaint, Hill brings a Section 1985(3) claim alleging that Defendants conspired to deprive him of equal protection of the laws. "Title 42 U.S.C. § 1985(3) creates a private right of action for damage for injury or deprivation caused by a conspirator to deprive 'any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Burnett v. Grattan,* 468 U.S. 42, 45 n.4, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). To prevail under Section 1985(3), Hill must demonstrate: (1) that a conspiracy existed; (2) for the purpose of depriving him of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or a deprivation of a right or privilege. *See Keri v. Board of Tr. of Purdue Univ.,* 458 F.3d 620, 642 (7th Cir. 2006); *Brokaw v. Mercer County,* 235 F.3d 1000, 1024 (7th Cir. 2000). To establish that the purpose of the conspiracy was to deprive him of equal protection of the laws, Hill must present evidence of "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Brokaw,* 235 F.3d at 1024 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

Here, the City Defendants maintain that Hill has failed to set forth evidence creating a genuine issue of material fact that Defendants acted with discriminatory intent or racial animus. The Court agrees. In fact, Hill admits that Boudreau and Halloran did not make any racial comments or direct any racial animus at him during the interrogation and, as discussed above, Defendants O'Brien, Christophersen, McWeeny, Kill, Moser, and Paladino had no contact with Hill during his arrest and interrogation. (City Def.'s Stmt. Facts ¶¶ 17, 20, 21.) Meanwhile, Hill does not address the racial animus requirement in his summary judgment brief or point to any evidence in the record supporting this element of his Section 1985(3) claim. *See Kunz v.*

*DeFelice,* 538 F.3d 667, 681 (7th Cir. 2008) (in response to summary judgment, plaintiff must articulate legal theories under which he is entitled to relief).  Accordingly, construing the evidence and all reasonable inferences in Hill's favor, he has failed to present sufficient evidence establishing that a genuine issue of material fact exists as to his Section 1985(3) conspiracy claim.  *See* Fed.R.Civ.P. 56(e).  Therefore, the Court grants the City Defendants' and Rogers' summary judgment motions as to Count VII of Hill's Amended Complaint.

**B.    Conspiracy Claim under 42 U.S.C. § 1983 – Count VIII**

In Count VIII of his Amended Complaint, Hill alleges that Defendants reached an agreement to frame him for the Morgan crimes.  To establish a civil conspiracy claim under Section 1983, Hill must show that Defendants agreed to deprive him of his constitutional rights. *See Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007); *see also Redwood v. Dobson,* 476 F.3d 462, 466 (7th Cir. 2007) ("The minimum ingredient of a conspiracy [] is an agreement to commit some future unlawful act in pursuit of a joint objective.").  Specifically, "[t]o be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are.  It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988).  "[C]onspiracy is not an independent basis of liability in § 1983 actions." *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008).  As such, if a plaintiff fails to prove an underlying constitutional injury, any attendant conspiracy claim necessarily fails. *See Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000).

Because Hill has established a genuine issue of material fact concerning his coerced

confession claim against Halloran, Boudreau, and Rogers, he has established an underlying constitutional deprivation as a basis for his Section 1983 conspiracy claim. *See Cefalu,* 211 F.3d at 423. In further support of his civil conspiracy claim, Hill not only presents evidence that Halloran, Boudreau, and Rogers coerced his confession, but that they took part in coercing Williams' confession to the Morgan crimes as well. (*See* Pl.'s Stmt. Facts ¶¶ 7-36.) More specifically, Hill presents his deposition testimony that Detectives Boudreau and Hill drove him to the crime scene, physically and mentally abused him, and coached him as to the details of the Morgan crimes before he confessed. (*Id.* ¶¶ 8, 9, 11, 13, 14.) Hill further sets forth evidence that the details of his coerced confession are strikingly similar to Williams' allegedly coerced confession and that it was later discovered that Williams was incarcerated at the time of the Morgan crimes. (*Id.* ¶¶ 31-36.) Also, Williams and Hill did not know each other at that time. (*Id.* ¶ 31.) Meanwhile, not only was Rogers involved in Hill's alleged coerced confession as discussed above, he was also involved in Williams' allegedly coerced confession. (*Id.* ¶ 34.)

Viewing these facts and all reasonable inferences in Hill's favor, Hill has presented sufficient evidence raising a genuine issue of material fact that Halloran, Boudreau, and Rogers had an agreement to coerce him to confess to the Morgan crimes because not only were Hill's and Williams' confessions strikingly similar, there is unequivocal evidence that Williams did not commit the Morgan crimes because he was incarcerated on that date. *See Alexander v. City of South Bend,* 433 F.3d 550, 557 (7th Cir. 2006) ("conspiratorial agreement may be established by circumstantial evidence"). Accordingly, the Court denies Defendants' summary judgment

motions as to Count VIII of the Amended Complaint.[5]

## IV.    Failure to Intervene Claim – Count X

In Count X of the Amended Complaint, Hill alleges that Defendant police detectives failed to intervene to prevent the deprivation of his constitutional rights.  (*See* Amend. Compl. ¶ 145.)  For liability to attach to a police officer's failure to intervene, the police officer must have had a reason to know that a constitutional deprivation was taking place and that he had a realistic opportunity to intervene to prevent the deprivation.  *See Montano v. City of Chicago,* 535 F.3d 558, 569 (7th Cir. 2008); *see also Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994) ("under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983.").  "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."  *Harper v. Albert,* 400 F.3d 1052, 1064 (7th Cir. 2005).

Because Hill has established a genuine issue of material fact concerning his coerced confession claim against Detectives Boudreau and Halloran, the Court turns to whether Hill has presented sufficient evidence creating a genuine issue of material fact for trial that Boudreau or Halloran had a reason to know that a constitutional deprivation was taking place and whether they had a realistic opportunity to intervene to prevent that deprivation.  *See Montano,* 535 F.3d at 569.  Based on the evidence discussed above concerning Hill's Section 1983 conspiracy claim

---

[5]  Hill also argues that Detectives O'Brien and Christophersen conspired to coerce his confession, yet admits that these Defendants had no contact or interaction with him during his arrest and interrogation.  (City Defs.' Stmt. Facts ¶ 21.)  In addition, Hill fails to identify any evidence that O'Brien or Christophersen agreed with the other City Defendants to coerce his confession.  Because O'Brien and Christophersen had no personal involvement in coercing Hill's confession, they cannot be held liable for conspiring to do so.  *See Johnson v. Snyder,* 444 F.3d 579, 583 (7th Cir. 2006) ("to recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.") (citation omitted).

and underlying coerced confession claim, Hill has presented sufficient evidence raising an issue for trial that Boudreau and Halloran knew that a constitutional violation was taking place, namely, that the other detective was coercing Hill's confession in violation of his Fifth Amendment right against self-incrimination, and that Halloran and Boudreau had the opportunity to prevent the constitutional deprivation because both detectives were present at Hill's interrogation. *See id.*; *Abdullahi v. City of Madison,* 423 F.3d 763, 774 (7th Cir. 2005). As such, the Court denies the City Defendants' summary judgment motion as to Hill's failure to intervene claim as alleged in Count X of the Amended Complaint.

**V.     Cook County Assistant State's Attorney Rogers' Additional Defenses**

**A.     Absolute Prosecutorial Immunity**

Rogers argues that he is protected by absolute prosecutorial immunity. Prosecutors are protected by absolute immunity from liability in Section 1983 actions for core prosecutorial functions, such as commencing a criminal prosecution. *See Levy,* 510 F.3d at 764 (citing *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). More specifically, a "prosecutor is shielded by absolute immunity when he acts 'as an advocate for the State' but not when his acts are investigative and unrelated to the preparation and initiation of judicial proceedings." *Smith v. Power,* 346 F.3d 740, 742 (7th Cir. 2003) (citing *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993)). The Supreme Court teaches that when "determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, [courts] have applied a 'functional approach,'" looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley,* 509 U.S. at 269 (internal citations omitted).

Thus, a prosecutor involved in a conspiracy to target a criminal suspect is not protected by absolute immunity, *see Johnson v. Dossey,* 515 F.3d 778, 783 (7th Cir. 2008), nor is a prosecutor who fabricates evidence. *See Buckley,* 509 U.S. at 274-75.

As discussed above, Hill has set forth evidence raising an issue of fact as to whether Rogers took part in coercing his confession to the Morgan crimes. Because there is a genuine issue of material fact for trial that Rogers was involved in coercing Hill's confession, he is not entitled to summary judgment on the basis of absolute prosecutorial immunity for his conduct. *See Johnson,* 515 F.3d at 783; *see also Patterson v. Burge,* 328 F.Supp.2d 878, 892 (N.D. Ill. 2004). In other words, Rogers' alleged conduct in coercing Hill to confess and any attendant conspiracy to do so is completely "unrelated to the preparation and initiation of judicial proceedings," *see Smith,* 346 F.3d at 742, and thus Rogers has failed in his burden of establishing that absolute immunity is justified under the circumstances. *See Burns v. Reed,* 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) ("official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question").

**B.      Collateral Estoppel**

Finally, Rogers maintains that Hill is collaterally estopped from relitigating the legality of his confession. Rogers specifically argues that because a Circuit Court of Cook County Judge held an evidentiary hearing in 1993 on Hill's motion to suppress and concluded that Hill's confession was not coerced, Hill is estopped from bringing his Fifth Amendment coerced confession claim in federal court.

"The doctrine of collateral estoppel generally bars relitigation of issues that were litigated fully and decided with finality in a previous proceeding." *Sornberger,* 434 F.3d at 1020. The

Court applies Illinois' preclusion rules to determine whether the prior state court judgment bars litigation of Hill's coerced confession claim. *See id.* at 1020 n.9 ("Illinois law determines the preclusive effect, if any, of a judgment rendered by an Illinois court."). Under Illinois law, "[c]ollateral estoppel, also known as issue preclusion, applies when: (1) a material fact issue decided in the earlier adjudication is identical to the one in the current proceeding; (2) there was a final judgment on the merits in the earlier adjudication; and (3) the party against whom estoppel is asserted was a party or was in privity with a party in the earlier adjudication." *Goodwin v. Board of Tr. of Univ. of Ill.,* 442 F.3d 611, 621 (7th Cir. 2006). "Even if these threshold requirements are met, the doctrine should not be applied unless it is clear that no unfairness will result to the party that would be estopped from re-litigating the issue." *Id.*

Hill maintains that his vacated conviction cannot be the basis for collateral estoppel. The Court agrees because it is well-established under Illinois law that when a judgment is vacated, it ceases to have any preclusive effect. *See Korczak v. Sedeman,* 427 F.3d 419, 422 (7th Cir. 2005) ("A vacated judgment is not a permissible basis for collateral estoppel."); *Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.,* 391 F.3d 871, 881 (7th Cir. 2004) ("once a judgment is reversed it ceases to have collateral estoppel effect."); *Pontarelli Limousine, Inc. v. City of Chicago,* 929 F.2d 339, 340 (7th Cir. 1991) ("A vacated judgment has no collateral estoppel or res judicata effect under Illinois law."). Because Hill's vacated conviction cannot be the basis for collateral estoppel, Rogers' argument fails. *See Evans v. Katalinic,* 445 F.3d 953, 955-56 (7th Cir. 2006) (collateral estoppel argument "absurd" because plaintiff received full innocence-based pardon from Illinois governor).

**CONCLUSION**

For the reasons, the Court grants in part and denies in part the City Defendants' and

Rogers' Motions for Summary Judgment brought pursuant to Federal Rule of Civil Procedure

56.

**Dated:** January 26, 2009

            **ENTERED**

            _____

            **AMY J. ST. EVE**
            **United States District Court Judge**