# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06 C 6772 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants have moved pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to preclude the expert testimony of Drs. Charles Michael Bowers and Constantine Karazulas. For the following reasons, the Court denies Defendants' motions.

## BACKGROUND

Plaintiff Harold Hill alleges that Defendants Kenneth Boudreau and John Halloran coercively interrogated him resulting in his false confession in connection with the 1990 murder of Kathy Morgan in violation of his Fifth Amendment right against self-incrimination. At Hill's criminal trial, the State presented the testimony of forensic odontologist, Dr. John Kenny, who testified about the bite marks on the victim's breast and a "hickey" mark on the victim's neck. In particular, Dr. Kenny testified that the hickey mark was consistent with the general size and shape of Hill's mouth and that the bite mark was inflicted by co-defendant Dan Young's dentition. Hill's defense counsel did not present an opposing expert at the criminal trial.

After Hill was convicted, he filed a post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.* During Hill's post-conviction proceedings,

Drs. Karazulas and Bowers re-analyzed the bite mark evidence that had been presented at trial. Although Hill asserts that if Defendants agree not to reference the bite mark evidence, he will not need to delve into this topic at trial, Defendants nevertheless maintain that they intend to introduce bite mark evidence and seek to exclude Dr. Karazulas' and Bowers' testimony under *Daubert* and Rule 702.

## LEGAL STANDARD

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton,* 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed.R.Evid. 702). Rule 702 also requires that: "(1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Zamecnik v. Indian Prairie Sch. Dist. No. 204,* 636 F.3d 874, 881 (7th Cir. 2011) (quoting Fed.R.Evid. 702).

Under the expert-testimony framework, federal courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See Banister,* 636 F.3d at 831; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). In particular, federal courts employ a three-part analysis in making this determination: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2)

the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Illinois Central R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167 (1999)).

An expert may be qualified to render opinions based on experience alone. *See Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data"). "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc*., 493 F.3d 782, 787-88 (7th Cir. 2007) (citations and quotations omitted). As such, courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Id.* Finally, "[t]he proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis,* 561 F.3d at 705.

**ANALYSIS**

**I.     Relevancy**

Defendants first argue that Dr. Karazulas' and Bowers' opinions are not relevant, namely, that their opinions would not assist the jury in determining any facts at issue. As the *Daubert* Court teaches, Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." *Id.* at 591 (quoting Fed.R.Evid. 702). In other words, *"Daubert* instructs that expert testimony must be relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement." *United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007). "Expert testimony which does not relate to an issue in the case is not relevant, and ergo, not helpful." *See Daubert,* 509 U.S. at 591 (citation omitted); *see also Porter v. Whitehall Labs., Inc.,* 9 F.3d 607, 613 (7th Cir. 1993).

Before proceeding to Defendants' arguments, it is helpful to note the bite mark evidence Defendants intend to introduce at trial. Although Defendants do not articulate exactly what Dr. Kenny will testify about at trial, they have listed him as a may-call witness. In their motions to bar Drs. Bowers' and Karazulas' testimony, Defendants explain that at Hill's criminal trial, Dr. Kenny, a forensic odontologist and pediatric dentist, testified that he had analyzed the bite marks on Morgan's breast and concluded that it was inflicted by Young's dentition. Dr. Kenny further opined at Hill's criminal trial that the hickey mark on Morgan's neck was consistent with the general size and shape of Hill's mouth. Defendants also seek to introduce into evidence Dr. Kenny's report to Dr. Stein regarding the Morgan homicide, Dr. Kenny's preliminary report to Assistant State's Attorney Diane Dickett, Dr. Kinney's final report to Assistant State's Attorney

4

Dickett, and other materials related to Dr. Kinney's bite mark opinion, including photographs and video. Defendants have yet to provide these documents to the Court, although Hill has provided the Court with the preliminary report to Assistant State's Attorney Dickett and a billing document.

In response to Defendants' *Daubert* motions, Hill has demonstrated that Drs. Bowers' and Karazulas' testimony is highly relevant to the issues in this lawsuit if Dr. Kenny testifies or if Defendants offer bite mark evidence as part of their defense. *See Lewis,* 561 F.3d at 705. More specifically, Drs. Karazulas' and Bowers' testimony will assist the trier of fact in determining whether Dr. Kenny's opinions concerning the bite mark evidence are flawed. Drs. Bowers and Karazulas, for example, will testify that Morgan's body was exposed to heat and her skin had shriveled before Dr. Kenny's examination. Because Morgan's body was charred, Dr. Karazulas will testify that no reliable comparison could be made to the bite marks found on Morgan's breast and neck. Dr. Bowers further explains that even despite the heat and any distortion cause by the burning, Young's dentition has a distinguishing characteristic that excluded his dentition for creating the bite mark. Likewise, Dr. Bowers would testify that it is impossible to link Hill to the hickey because the hickey mark had no distinguishing characteristics narrowing the class of persons who might have made the mark. As such, Drs. Bowers' and Karazulas' opinion testimony is highly relevant to rebut testimony that Hill and Young left marks on Morgan's body. *See Gallardo,* 497 F.3d at 733.

Defendants argue that because Drs. Bowers' and Karazulas' formed their opinions after Hill's alleged coerced confession, their opinion testimony is not relevant to whether Defendants coerced Hill's confession. Defendants' argument is misplaced because Hill does not offer this

5

testimony of evidence as to what Defendants Boudreau and Halloran knew or did not know at the time of Hill's interrogation. Instead, Hill offers this evidence to rebut Defendants' assertion that the bite mark evidence indicates Hill's confession was truthful and that he was guilty of Morgan's murder. Accordingly, Defendants' arguments that Drs. Bowers' and Karazulas' opinion testimony is not relevant fail based on the evidence Defendants intend to introduce regarding bite marks.

## II. Reliability

Next, Defendants maintain that Drs. Bowers' and Karazulas' opinions are not reliable. The Court addresses Drs. Karazulas' and Bowers' backgrounds and opinions separately.

### A. Dr. Constantine Karazulas

In 1959, Dr. Karazulas obtained his dental degree. In 1977, Dr. Karazulas began working with the Connecticut State Police laboratory in forensic odontology. Thereafter, in 1984, Dr. Karazulas became the chief forensic odontologist of the Connecticut State Police Forensic Science Laboratory, a position he still holds. In his decades of experience with the Connecticut State Police Forensic Science Laboratory, Dr. Karazulas has performed thousands of forensic odontology analyses. Dr. Karazulas, along with Dr. Larry T. Weddle of Yale University, are credited with developing the standard bite mark comparison method that uses Adobe Photoshop overlays. Also, Dr. Karazulas has been a fellow of the American Academy of Forensic Sciences and belongs to the American Society of Forensic Odontology and the International Association of Identification. Presently, Dr. Karazulas teaches courses on crime scenes and odontology at the University of New Haven. Meanwhile, Dr. Karazulas has testified as an opinion witness approximately thirty times in his career. Based on Dr. Karazulas'

6

extensive academic and practical expertise in forensic odontology, he qualifies an expert under *Daubert* and Rule 702 to testify about the bite mark analyses in this matter. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) ("Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (citation omitted).

Based on his extensive background and experience, Dr. Karazulas testified that after he saw photographs of the condition of Morgan's body, he observed that the bite mark and hickey were in a burn area and that Morgan had rigor mortis. (R. 427, Ex. A, Karazulas' Dep., at 16-17, 20-24.) Also, Dr. Karazulas opined that because there was at least 40 percent distortion of the tissue, any bite mark analysis was speculative. (*Id.*) Dr. Karazulas further opined that because Morgan's tissue was distorted, there was no way to establish, scientifically, that Young or Hill left the bite marks. (*Id.* at 30-31.)

In the present motion, Defendants argue that because Dr. Karazulas testified that the evidence of the bite mark was unsuitable for analysis, his opinion that there was no way to establish that Hill or Young left the bite marks on Morgan's body is somehow flawed. Dr. Karazulas' conclusion that a comparison could not be made is based on his review of the photographs that Morgan's skin was exposed to extreme heat and that her skin was too distorted, as well as his vast experience in bite mark analysis. *See Metavante Corp.,* 619 F.3d at 761 ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data"). Meanwhile, Defendants' argument attacks Dr. Karazulas' conclusion, and not the reliability of the methodology used in forming his opinion. As the Seventh Circuit instructs, "[t]he focus of the district court's *Daubert* inquiry must be solely on principles and

7

methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.,* 498 F.3d 734, 742 (7th Cir. 2007). Moreover, Dr. Karazulas' conclusion is open to cross-examination and competing expert testimony. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 507 (7th Cir. 2003). In sum, Defendants' reliability argument fails.

### B. Dr. Charles Michael Bowers

Dr. Michael Bowers graduated from the University of Southern California Dental School in 1975 and has been practicing forensic dentistry since 1983. Dr. Bowers is also a licensed attorney in the State of California. Presently, Dr. Bowers serves as a diplomate on the American Board of Forensic Odontology. As a diplomate, Dr. Bowers undertook a comparative analysis of methods used by forensic odontologists and published, along with Dr. David Sweet, guidelines for bite mark comparison for the American Board of Forensic Odontology in the Journal of Forensic Scientists. In the past eight years, Dr. Bowers has been retained to perform approximately 40 to 50 bite mark investigations. Moreover, Dr. Bowers has published a number of articles regarding the scientific foundation of methods used in forensic dentistry. Based on Dr. Bowers' extensive academic and practical expertise in forensic odontology, he qualifies as an expert under *Daubert* and Rule 702 to testify about the bite mark analyses in this matter. *See Gayton,* 593 F.3d at 616.

Dr. Bowers opined that Dr. Kenny's opinion – that Young was the source of the bite mark on Morgan – was based on procedures that were below the standard of care held by the

8

forensic dentistry community. (R. 427, Ex. G, Bowers Aff. ¶ 6.) In particular, Dr. Bowers averred that Dr. Kenny's use of plaster casts of Young were of inadequate quality to render the opinion that Young was the source of the bite mark. (*Id.* ¶ 6 (A)). Also, Dr. Bowers opined that Dr. Kenny failed to consider a feature that excludes Young as the source, namely, that his lower front teeth are of the same height, unlike the biter's mouth. (*Id.* ¶ 6(C)).

Defendants take issue with this opinion because Dr. Bowers used the plaster casts in his analysis even though he found that Dr. Kenny's use of them was below the relevant standard of care. Dr. Bowers' opinion that Young was not the source of the bite mark, however, was also based on Dr. Bowers visually inspecting the teeth using the photographs that Dr. Kenney took. Based on his inspection, Dr. Bowers noted that one of the biter's lower front teeth was shorter, whereas Young's lower front teeth were even. Thus, based on his experience and visual inspection of the photographs, Dr. Bowers formed his opinion as to the biter's dentition compared to Young's dentition. As to Defendants' argument that Dr. Bowers testified that the heat exposure to Morgan's body would make any bite mark analysis inaccurate, yet Dr. Bowers formed an opinion nonetheless, any such inconsistency does not go to the reliability of Dr. Bowers' methodology, but instead goes to the flaws and ultimately the persuasiveness of Dr. Bowers' opinion that Defendants may test during cross-examination. *See Deputy,* 345 F.3d at 507; *see also Gayton,* 593 F.3d at 616 ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination."). Therefore, Defendants' reliability arguments concerning Dr. Bowers' methodology fail.

### III. Prejudice

Finally, Defendants argue that the probative value of Drs. Bowers' and Karazulas' testimony is substantially outweighed by the danger of unfair prejudice and juror confusion. *See* Fed.R.Evid. 403; *United States v. Ozuna,* 561 F.3d 728, 738 (7th Cir. 2009). As the Seventh Circuit explains,"[e]vidence is considered unfairly prejudicial, not merely because it damages the opposing party's case, but also because its admission makes it likely that the jury will be induced to decide the case on an improper basis." *Thompson v. City of Chicago,* 472 F.3d 444, 456 (7th Cir. 2006). As discussed above, not only is Drs. Bowers' and Karazulas' testimony highly probative to rebut any trial testimony about the bite mark evidence against Hill, if the Court were to exclude Drs. Bowers' and Karazulas' testimony while allowing other bite mark evidence at trial, Hill, himself, would suffer prejudice because of the real possibility that the jury would consider this un-rebutted bite mark evidence improperly. *See Thompson,* 472 F.3d at 456. Defendants' juror confusion argument similarly fails. Specifically, if the jury hears only half the story of the bite mark evidence, the jury would be distracted from the central issues in this matter. *See United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010). As such, Defendants' argument that Drs. Karazulas' and Bowers' testimony is substantially outweighed by the potential prejudice and jury confusion is without merit. *See* Fed.R.Evid. 403. As long as Defendants introduce testimony regarding the bite marks, Drs. Bowers' and Karazulas' testimony is relevant and admissible.

<br>

## CONCLUSION

For these reasons, the Court denies Defendants' motion to bar Dr. Constantine Karazulas as an expert witness and Defendants' motion to bar Dr. Charles Michael Bowers as an expert witness.

**Dated:** June 20, 2011

                                  **ENTERED**

                                  *[signature]*

                                  **AMY J. ST. EVE**
                                  **United States District Court Judge**