**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAROLD HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06 C 6772 |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Defendants move pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), to preclude Dr. Karl Reich's expert testimony. For the following reasons, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiff Harold Hill maintains that Defendants Kenneth Boudreau and John Halloran coercively interrogated him resulting in his false confession in connection with the 1990 murder of Kathy Morgan in violation of his Fifth Amendment right against self-incrimination. In the present motion, Defendants contend that Dr. Reich's expert opinion testimony as to post-conviction DNA testing is irrelevant and unreliable. As the Court explained in its earlier rulings, under the facts and circumstances of this case, DNA evidence is relevant to Hill's Fifth Amendment claim because it has the tendency to make the fact that Defendants coerced his confession more probable than not. *See United States v. Canady,* 578 F.3d 665, 670-71 (7th Cir. 2009) ("Rule 401 defines relevant evidence as 'evidence having any tendency to make the existence of any fact that is of consequence ... more probable or less probable than it would be

without the evidence'"). In general, as long as Defendants argue that Hill remains guilty of the Morgan murder, DNA evidence regarding Hill's innocence is highly relevant and probative to his coerced confession claim.

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)." *Lewis v. Citgo Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "The Federal Rules of Evidence define an 'expert' as a person who possesses 'specialized knowledge' due to his 'skill, experience, training, or education' that 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Banister v. Burton,* 636 F.3d 828, 831 (7th Cir. 2011) (quoting Fed.R.Evid. 702). Rule 702 also requires that: "(1) the testimony must be based upon sufficient facts or data; (2) it must be the product of reliable principles and methods; and (3) the witness must have applied the principles and methods reliably to the facts of the case." *Zamecnik v. Indian Prairie Sch. Dist. No. 204,* 636 F.3d 874, 881 (7th Cir. 2011) (quoting Fed.R.Evid. 702).

Under the expert-testimony framework, federal courts perform the gatekeeping function of determining prior to admission whether the expert testimony is both relevant and reliable. *See Banister,* 636 F.3d at 831; *United States v. Pansier*, 576 F.3d 726, 737 (7th Cir. 2009). In particular, federal courts employ a three-part analysis in making this determination: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the expert testimony must assist the trier of fact in understanding the evidence or to

determine a factual issue. *See Myers v. Illinois Central R. Co.,* 629 F.3d 639, 644 (7th Cir. 2010). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would be employed by an expert in the relevant field." *Jenkins v. Bartlett*, 487 F.3d 482, 489 (7th Cir. 2007) (quotation omitted).

An expert may be qualified to render opinions based on experience alone. *See Metavante Corp. v. Emigrant Sav. Bank,* 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data"). "In certain fields, experience is the predominant, if not the sole basis for a great deal of reliable expert testimony." Advisory Committee Notes to Rule 702. "[W]hile extensive academic and practical expertise in an area is certainly sufficient to qualify a potential witness as an expert, Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Trustees of Chicago Painters & Decorators Pension, Health & Welfare v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 787-88 (7th Cir. 2007) (citations and quotations omitted). As such, courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Id.* Finally, "[t]he proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis,* 561 F.3d at 705.

## ANALYSIS

**I.  Relevancy**

Defendants first argue that Dr. Reich's opinion testimony is not relevant because it would not assist the jury in determining any facts at issue in this lawsuit. As the *Daubert* Court teaches,

3

Rule 702 "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." *Id.* at 591 (quoting Fed.R.Evid. 702). Put differently, "*Daubert* instructs that expert testimony must be relevant and factually linked to the case in order to meet Rule 702's 'helpfulness' requirement." *United States v. Gallardo,* 497 F.3d 727, 733 (7th Cir. 2007). "Expert testimony which does not relate to an issue in the case is not relevant, and ergo, not helpful." *See Daubert,* 509 U.S. at 591 (citation omitted); *see also Porter v. Whitehall Labs., Inc.,* 9 F.3d 607, 613 (7th Cir. 1993).

In response to DNA evidence found under Morgan's fingernails that excluded Hill as a contributor, Defendants have developed the defense that Hill's DNA may have been found on other evidence, but because there was insufficient data, the DNA testing that was performed was inconclusive. In rebuttal, Dr. Reich opines that additional testing could have been performed. In this context, Defendants argue that Dr. Reich's testimony is not relevant because there is no way of knowing the results of any additional testing. Contrary to Defendants' argument, Dr. Reich's opinion that had there been further analysis of the DNA evidence, there would have been a more complete profile of male contributors is relevant. To clarify, this explanation is helpful to the jury because it provides an alternative explanation for why a DNA match was not obtained and in rebuttal to Dr. Staub's opinion that "it cannot be scientifically concluded that Hill, Young, and Williams were not involved in the crime." (R. 429, Ex. B, Staub Report, at 8.) Accordingly, Dr. Reich's opinion that additional testing would have provided a more complete profile is relevant and helpful to the jury. *See Gallardo,* 497 F.3d at 733.

Defendants also argue that Dr. Reich's testimony rebutting Donald Parker's analysis for the Illinois State Police regarding the number of individuals included in the DNA mixture under

4

Morgan's fingernails is irrelevant. Specifically, Parker concluded that the DNA came from Morgan and at least two other people, whereas Dr. Reich concluded that the DNA contains mixtures of Morgan and one male. Hill maintains that Dr. Reich's testimony is relevant because it conflicts with Defendants' theory of the case that three people committed the Morgan murder. Defendants, on the other hand, maintain that they do not intend to offer evidence attempting to prove the number of Morgan's attackers. Accordingly, testimony about the number of contributors to the DNA mixture is not relevant and would lead to juror confusion. *See* Fed.R.Evid. 401, 403; *see United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010) (evidence is confusing if it distracts jurors from central issue of case). Therefore, the Court bars Dr. Reich's opinion testimony regarding the number of contributors to the DNA mixture found under Morgan's fingernails.

Next, Defendants assert that Hill has wrongfully interjected his innocence into this lawsuit and that he is attempting to submit Dr. Reich's DNA evidence to demonstrate his innocence. As discussed above, as long as Defendants argue that Hill is guilty of the Morgan murder, evidence relating to Hill's innocence and Defendants' theory of Hill's guilt is highly relevant and probative to Hill's coerced confession claim. Therefore, Defendants' argument that Hill is trying to interject irrelevant evidence about his innocence is disingenuous at best. Further, testimony concerning the DNA evidence is also relevant to the extent that it demonstrates that Hill's confession was false and rebuts Defendants' arguments that Hill independently knew the details of Morgan's murder. Defendants also argue that Dr. Reich's opinion testimony is not relevant and does not assist the jury in understanding any facts at issue because Dr. Reich did not conduct the DNA testing, but instead reviewed the DNA

5

results done by other laboratories. Defendants fail to mention, however, that their competing expert, Dr. Rick W. Staub, did not conduct his own testing, but similarly based his analysis on laboratory results. (*See* R. 429, Ex. B, Staub Report.) Moreover, the Seventh Circuit has rejected a similar argument and concluded that experts can rely on scientific data generated by others. *See Clark v. Takata Corp.,* 192 F.3d 750, 758 (7th Cir. 1999) ("Either 'hands-on testing' or 'review of experimental, statistical, or other scientific data generated by others in the field' may suffice as a reasonable methodology upon which to base an opinion.") (citation omitted). Defendants' relevance argument in this regard fails.

In this same vein, Defendants contend that Dr. Reich's opinion testimony is cumulative because it reiterates the conclusions of the other laboratories and Hill has disclosed representatives of these laboratories as witnesses. As Hill explains, rather than calling six witnesses, it makes more sense to call an expert who can testify to the body of DNA testing as a whole. The Court agrees. Because Dr. Reich's opinion testimony would assist the jury in understanding the various laboratory results, it is helpful and relevant. *See Banister*, 636 F.3d at 831; *United States v. Avila,* 557 F.3d 809, 821 (7th Cir. 2009). Meanwhile, Defendants can cross-examine Dr. Reich's summary to establish that it is inaccurate, incomplete, and biased as Defendants argue in their motion. *See Gayton v. McCoy,* 593 F.3d 610, 616 (7th Cir. 2010) ("Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination."); *see also Walker v. Soo Line R. Co.,* 208 F.3d 581, 587 (7th Cir. 2000).

Last, Defendants argue Dr. Reich's opinion that the overall testing was biased toward linking Hill to the crime is not relevant because Dr. Reich also stated that the testing did not

6

reflect any such bias. Defendants' argument does not go to the relevancy of Dr. Reich's opinion, but to the inconsistencies in Dr. Reich's testimony, which can be tested through cross-examination and used to impeach Dr. Reich's credibility. *See Gayton,* 593 F.3d at 616; *Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 753 (7th Cir. 2002).

Because the Court concludes that the majority of Dr. Reich's opinion testimony is relevant, it now turns to Defendants' arguments that Dr. Reich's methodology in forming his conclusions is unreliable.

## II.     Reliability

Dr. Reich has worked in the field of DNA analysis since he was a graduate student in the Department of Biological Chemistry at the University of California, Los Angeles ("UCLA") in 1979. Specifically, Dr. Reich received his undergraduate degree in chemistry from Cornell University in 1977 and his Ph.D. in molecular biology from the UCLA and Harvard Medical School in 1988. After obtaining his Ph.D., Dr. Reich had a two-year fellowship at the Institute Pasteur in Paris, France and then served six years as a research fellow at Stanford University School of Medicine. Dr. Reich has published numerous articles on DNA forensics and has taught DNA evidence courses to legal professionals.

Currently, Dr. Reich is the Chief Scientific Officer for Paternity, DNA Forensics, and Molecular Biology at Independent Forensics of Hillside, Illinois. Prior to his work at Independent Forensics, Dr. Reich worked in pharmaceutical development and genomics-based research. Based on Dr. Reich's extensive academic background and practical expertise in DNA forensics, he qualifies as an expert under *Daubert* and Rule 702 to testify about the field of DNA forensic analysis. *See Gayton,* 593 F.3d at 616 ("Whether a witness is qualified as an expert can

7

only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.") (citation omitted).

In support of their argument that Dr. Reich's testimony is based in unreliable principles and methods, Defendants argue that Dr. Reich misrepresented the facts in summarizing the DNA testing as follows: "Mr. Harold Hill, Mr. Dan Young, Jr., and Mr. Peter Williams are excluded as being contributors to any and all items of evidence examined." In particular, Defendants argue that Hill, Young, and Williams could not be excluded from several items of evidence because the DNA results were not suitable for comparison. These items include Morgan's stained sock, her blue pants, and a dowel rod used in the murder. Based on Dr. Reich's admission that exclusion is not possible when a comparison cannot be made, Defendants argue that Dr. Reich's conclusion is demonstrably false and not based on any scientific method.

Even if Dr. Reich's conclusion is inaccurate because no comparison could be made on the sock, pants, and dowel rod, Dr. Reich's statement does not implicate his scientific methodology. Instead, Defendants can address Dr. Reich's statement that Hill, Young, and Williams were excluded as being contributors to any and all items should be addressed through cross-examination and competing expert testimony. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). In short, Dr. Reich's testimony is admissible and it is the jury's decision – not the Court's – whether to accept his explanations. *See Deputy v. Lehman Bros., Inc.,* 345 F.3d 494, 507 (7th Cir. 2003).

Defendants further argue that Dr. Reich's opinion regarding the number of individuals included in the DNA mixture under Morgan's fingernails is unreliable based on Donald Parker's analysis concluding otherwise. Defendants' argument, however, does not go to Dr. Reich's methodology, but instead targets Dr. Reich's conclusion. And, although the Court bars Dr. Reich's opinion testimony regarding the number of contributors to the DNA mixture found under Morgan's fingernails as discussed above, it is important to note that "[t]he focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate." *Winters v. Fru-Con Inc.,* 498 F.3d 734, 742 (7th Cir. 2007); *see also Lehman Bros.,* 345 F.3d at 507. As such, Defendants may attack Dr. Reich's conclusions on cross-examination and through Parker's expert testimony. *See Walker,* 208 F.3d at 589 ("That two different experts reach opposing conclusions from the same information does not render their opinions inadmissible.").

Next, Defendants assert that Dr. Reich's summary of the analysis conducted by Reliagene misstates the results provided in the Reliagene reports. Defendants contend, for example, that in his summary, Dr. Reich omitted several items of evidence that Reliagene analyzed. Again, Defendants' challenge does not go to Dr. Reich's methodology, but to the materials that Dr. Reich reviewed in preparing for his testimony – materials that may contain ammunition for cross-examination. *See Fidelity Nat'l Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 751 (7th Cir. 2005). Accordingly, this reliability argument fails.

Defendants' last reliability argument is that Dr. Reich's conclusions "are merely musings, without basis in fact." Based on the Court's review of Dr. Reich's July 18, 2008 deposition testimony and his July 1, 2008 "Report and Summary of DNA-Based evidence in Harold Hill Case," the Court would be hard-pressed to conclude that Dr. Reich's conclusions are not based in any fact and are mere musings. Moreover, Defendants' undeveloped argument does not save the day. *See Judge v. Quinn,* 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (citation omitted). Therefore, Defendants' arguments regarding the reliability of Dr. Reich's methods fail.

### III. Juror Confusion

Last, Defendants argue that the probative value of Dr. Reich's testimony is substantially outweighed by the danger of misleading and confusing the jury. *See* Fed.R.Evid. 403. Because the Court grants Defendants' motion in part concerning Dr. Reich's opinion testimony about the number of contributors to the DNA mixture under Morgan's fingernails, the Court need not address Defendants' juror confusion argument as to this issue. Meanwhile, as long as Defendants argue that Hill remains guilty of the Morgan murder, the other DNA evidence discussed in this opinion regarding Hill's innocence is highly relevant and probative to his coerced confession claim. Finally, Defendants have failed to offer any good reason why this evidence would district the jurors from the central issues in this lawsuit. *See Alayeto,* 628 F.3d at 922.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Defendants' motion to bar Dr. Karl Reich as an expert witness.

**Dated:** June 27, 2011

                                        **ENTERED**

                                 *[signature]*

                                **AMY J. ST. EVE**
                                **United States District Court Judge**