# IN THE UNITED STATED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HAROLD HILL,                  )
                                     )
              Plaintiff,        )
                                     )     Case No. 06 C 6772
                 v.             )
                                     )
CITY OF CHICAGO, et al.,     )
                                   )
             Defendants.     )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant Chicago Police Detectives Kenneth Boudreau's and John Halloran's motion in limine to bar evidence of ten other acts pursuant to Federal Rule of Evidence 404(b). For the following reasons, the Court, in its discretion, grants in part and denies in part Defendants' Rule 404(b) motion. Specifically, the Court grants Defendant Officers' motion as to other acts evidence concerning Curtis Milsap, Abel Quinones, Arnold Day, Enrique Valdez, Clayborn Smith, and Robert Wilson. The Court denies Defendant Officers' motion as to other acts evidence regarding Kilroy Watkins, and grants in part and denies in part Defendants' motion as to Tyrone Reyna, Oscar Gomez, and Derrick Flewellen. The parties must submit an agreed upon limiting jury instruction concerning this Rule 404(b) evidence by no later than September 6, 2011.

## BACKGROUND

Plaintiff Harold Hill brought this lawsuit pursuant to 42 U.S.C. § 1983 against the City of Chicago, Chicago police officers, and a Cook County Assistant State's Attorney after his conviction for sexual assault and homicide was vacated based on post-conviction DNA evidence

that excluded Hill from samples taken from the victim's fingernails. After the Court's ruling on summary judgment, the following claims remain in this lawsuit against Defendant Officers Boudreau and Halloran: (1) Hill's Fifth Amendment coerced confession claim; (2) Hill's Section 1983 conspiracy claim based on his coerced confession claim; and (3) Hill's failure to intervene claim based on his coerced confession claim.

Hill's case arises out of the October 14, 1990 sexual assault and murder of Kathy Morgan. On March 20, 1992, two Chicago police officers arrested Hill for possession of a stolen automobile and possession of a handgun, and then transported him to the Seventh District Police Station in Chicago. At the police station, Hill admitted to committing two armed robberies – one in Chicago and one in Oak Lawn, Illinois. During the follow-up investigation of the Chicago armed robbery, Hill participated in a line-up at the Area 3 Station at 39th Street and California Avenue on March 21, 1992. Defendant Officers Boudreau and Halloran participated in conducting the line-up and questioned Hill about other crimes.

Approximately twenty-six hours after his arrest, Hill gave a court-reported statement implicating himself and two other men, Dan Young and Peter Williams, in the Morgan crimes. Hill, who was eighteen-years-old at the time, contends that Defendant Officers Boudreau and Halloran coerced his confession. Specifically, Hill testified at his deposition that Defendant Officers Boudreau and Halloran interrogated him in a closed interrogation room where he was handcuffed to a wall. He further testified that Defendant Officers started giving him details of the Morgan crimes, including showing him photographs and the victim's clothing. In addition, Hill testified that Defendant Officers put him in a car and took him to the crime scene, after which Defendant Boudreau asked him how he committed the Morgan crimes. After Defendants

drove Hill back to the police station, they put him in the same interrogation room and handcuffed him to the wall.  Hill testified that at that time, Defendant Officers said "You know you did it" and "You did this crime."  Thereafter, Defendant Boudreau yelled and screamed at Hill and when Hill denied committing the murder, Officer Boudreau grabbed him.  Hill admits that Defendant Halloran did not touch him, although Defendant Halloran remained in the interrogation room on and off during Hill's interrogation.  At one point, Defendant Halloran left the room and then Defendant Boudreau continued yelling at Hill and hit him in the ribs with his fist, after which he left the room.  When Defendants Halloran and Boudreau returned to the interrogation room, Defendant Boudreau continued to drill Hill about the Morgan murder. Again, Defendant Boudreau grabbed and yelled at Hill.  Also, Hill testified that Defendant Boudreau slapped him, continued to tell him that he had committed the murder, and told him the details of the crime.  Once again, Defendants took Hill to the scene of the crime at which time Defendant Boudreau slapped Hill and yelled at him.  After Defendants and Hill returned to the police station, Defendant Boudreau came into the interrogation room to show Hill photographs of potential suspects.  Hill testified that Defendant Boudreau pointed to photographs of Williams and Young.  Thereafter, Hill implicated Williams and Young in the Morgan murders because he was scared that Defendant Boudreau would hit him.  Hill further testified that he implicated Williams and Young because Defendant Boudreau continued to yell at him and applied psychological pressure.  Hill claims that he also implicated himself in the Morgan murder due to Defendant Boudreau's physical and psychological abuse.  Finally, Hill maintains that Defendant Boudreau told him what to say to the Cook County Assistant State's Attorney.

Over the next few days in March 1992, Chicago police detectives obtained written confessions from both Young and Williams. Despite Williams' confession, it was later confirmed that Williams was incarcerated at the Cook County Jail on the day of Morgan's homicide.

In September 1994, Hill and his co-defendant Dan Young were tried simultaneously – but to separate juries – for Morgan's sexual assault and homicide. The State introduced Hill's and Young's confessions as evidence against them during trial. In addition, both Hill and Young testified at trial maintaining their innocence and asserting that law enforcement coerced them into giving their confessions. In September 1994, the juries convicted Hill and Young for Morgan's sexual assault and homicide. Over a decade later, the results of DNA testing resulted in the trial court vacating Hill's and Young's convictions and the State dropping the charges against them.

## LEGAL STANDARDS

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). In limine rulings avoid delay and allow the parties the opportunity to prepare themselves and witnesses for the introduction or exclusion of the applicable evidence. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Trial courts have broad discretion in ruling on evidentiary issues before trial. *See United States v. Chambers,* 642 F.3d 588, 594 (7th Cir. 2011); *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 426 (7th Cir. 2000). Regardless of the Court's initial ruling on a motion in limine, the Court

may adjust its ruling during the course of trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006). The Court will only grant a motion in limine when the evidence is clearly inadmissable for any purpose. *See Jonasson v. Lutheran Child & Family Servs.,* 115 F.3d 436, 440 (7th Cir. 1997); *Thakore v. Universal Mach. Co. of Pottstown, Inc.,* 670 F.Supp.2d 705, 714 (N.D. Ill. 2009). The moving party bears the burden of establishing that the evidence is not admissible for any purpose. *See Mason v. City of Chicago,* 631 F.Supp.2d 1052, 1056 (N.D. Ill. 2009).

"Rule 404(b) provides that evidence of other acts is inadmissible 'to prove the character of a person in order to show action in conformity therewith' but may be admissible for other purposes, such as proof of motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident." *United States v. Hicks*, 635 F.3d 1063, 1069 (7th Cir. 2011) (citation omitted). When determining whether evidence is properly admitted under Rule 404(b), the Court considers whether: (1) the evidence is directed toward establishing a matter at issue other than the defendant's propensity to commit the conduct in question, (2) the evidence shows that the other act is similar and close enough in time to be relevant to the matter at issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice pursuant to Federal Rule of Evidence 403. *See id.*; *see also Duran v. Town of Cicero, Ill.,* ___ F.3d ___, 2011 WL 3444353, at *10 (7th Cir. Aug. 9, 2011). Under the second factor, the question of "how similar is similar enough" depends on the theory that makes the evidence admissible, and courts reach this decision on a case-by-case basis. *See United States v. Foster,* ___ F.3d ___, 2011 WL 2909455, at *6 (7th Cir. July 21, 2011) (quoting *United States v. Torres,*

977 F.2d 321, 326 (7th Cir. 1992)).  Also, "Rule 404(b) involves a discretionary decision for which the trial judge is best suited because of 'his familiarity with the case and ability to gauge the likely impact of the evidence in the context of the entire proceeding.'"  *Okai v. Verfuth,* 275 F.3d 606, 611 (7th Cir. 2001) (quotation omitted).

## ANALYSIS

### I.       Matters Other Than Propensity

Hill first argues that the manner in which Defendant Officers interacted and interrogated other murder suspects is relevant to establish Defendant Officers' modus operandi, especially because Defendant Officers claim that they followed specific police protocols for securing confessions from suspects and that these protocols did not involve coercion.  *See United States v. Robinson,* 161 F.3d 463, 467 (7th Cir. 1998) ("Evidence of modus operandi is evidence that shows a defendant's distinctive method of operation.").  Defendant Officers, however, maintain that they do not intend to assert that they followed the usual practice and protocol in investigating Hill nor do they intend to discuss any other investigations other than Hill's investigation and interrogation.  Meanwhile, although prior bad acts may be used to show that a defendant has a modus operandi, *see Treece v. Hochstetler,* 213 F.3d 360, 363 (7th Cir. 2000), any such evidence is usually offered to prove identity.  *See Robinson,* 161 F.3d at 467; *see also United States v. Rollins,* 301 F.3d 511, 518 n.3 (7th Cir. 2002); *United States v. Moore,* 115 F.3d 1348, 1354 n.3 (7th Cir. 1997); *United States v. Hudson,* 884 F.2d 1016, 1021 (7th Cir. 1989); *Newsome v. James*, No. 96 C 7680, 2000 WL 1047822, at *1 (N.D. Ill. July 27, 2000).  In the present lawsuit, identity is not at issue because Defendant Officers do not assert the defense that Hill has mistaken them for other officers.  *See Okai,* 275 F.3d at 613.  Moreover, Hill gives no

other cogent reason why the Court should allow this evidence under his modus operandi theory. *See United States v. Connelly,* 874 F.2d 412, 417 n.7 (7th Cir. 1989) ("Rule 404(b) does not specifically enumerate 'modus operandi' proof as an exception for similar act evidence but this court has approved the introduction of modus operandi evidence under the 'identity' exception to Rule 404(b)"). Indeed, Hill's modus operandi argument appears to be a disguised propensity argument. Finally, even if Hill's modus operandi theory were applicable, the factual background of many of the other bad acts do not meet the high degree of similarity required to prove modus operandi – as discussed in detail below. *See Foster,* ___ F.3d ___, 2011 WL 2909455, at *7; *see also U.S. v. Rollins,* 301 F.3d 511, 519 (7th Cir. 2002) ("modus operandi evidence must 'bear a singular strong resemblance to the pattern of the offense charged'") (citation omitted); *Treece,* 213 F.3d at 363 ("[i]f defined broadly enough, modus operandi evidence becomes nothing more than the character evidence that Rule 404(b) prohibits") (citation omitted).

Next, Hill maintains that the Rule 404(b) evidence is relevant and admissible to show intent because he is seeking punitive damages against Defendant Officers Halloran and Boudreau. *See Jannotta v. Subway Sandwich Shops, Inc.,* 125 F.3d 503, 517 (7th Cir. 1997) (other bad acts evidence admissible to show defendant's intent with respect to punitive damages in relation to fraudulent scheme); *see also Edwards v. Thomas,* 31 F.Supp.2d 1069, 1074 n.8 (N.D. Ill. 1999) (plaintiff's request "for punitive damages would appear to make the issue of Officers' intent to do harm relevant on that claim"). The Supreme Court cautions, however, that tangential other bad acts evidence which is independent from the acts upon which liability is premised cannot form the basis for punitive damages. *See State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 422-23, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ("A defendant should

be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business."); *see also Philip Morris USA v. Williams,* 549 U.S. 346, 356-57, 127 S.Ct. 1057, 166 L.Ed.2d 940 (2007) (jury cannot punish defendants for the harm caused by others). Hence, Hill's intent argument is tenuous at best, especially because evidence of Defendant Officers' other acts cannot be used against them in determining any punitive damages awards. *See Philip Morris,* 549 U.S. at 356-57.

Hill also maintains that the other bad acts evidence goes to Defendant Officers' preparation and plan. *See Wilson v. City of Chicago,* 6 F.3d 1233, 1238 (7th Cir. 1993) (police officers' previous interrogation methods "admissible for other purposes, including intent, opportunity, preparation, and plan"). In *Wilson*, the Seventh Circuit concluded that the trial court erred in excluding other bad acts evidence that police officers had interrogated another suspect using an electroshock device to extract a confession approximately nine days before the same police officers allegedly interrogated the plaintiff in the same manner. *See id.* Under *Wilson*, the other bad acts evidence may go to Defendant Officers' plan and preparation to coerce Hill's confession. Hill must still, however, meet the other mandates of Rule 404(b). The Court thus turns to the specific instances of other bad acts to determine whether the acts are similar enough in the context of Defendant Officers' preparation and plan, whether the acts are close enough in time, and whether the evidence's probative value is substantially outweighed by unfair prejudice under Rule 403.

## II.    Specific Instances of Other Bad Acts Evidence

Defendant Officers move in limine to exclude other bad acts evidence under Rule 404(b) concerning the following ten individuals: (1) Kilroy Watkins; (2) Curtis Milsap; (3) Tyrone

Reyna; (4) Oscar Gomez; (5) Abel Quinones; (6) Arnold Day; (7) Enrique Valdez; (8) Clayborn Smith; (9) Derrick Flewellen; and (10) Robert Wilson.

A.    **Kilroy Watkins**

Chicago police officers arrested Kilroy Watkins on January 15, 1992.  The police then took Watkins to the Third District police station and placed him in a line-up after which he was identified for having participated in an armed robbery.  The police transported Watkins to the Area 3 police station and placed him in lock-up.  The next morning, January 16, 1992, Defendant Officers Boudreau and Halloran interrogated Watkins about the shooting death of Leroy Porter. Watkins testified at his deposition that Officer Halloran accused him of committing the shooting and when Watkins denied shooting Porter, Officer Halloran stormed out of the room and brought back Officer Boudreau.  Watkins further testified that Officer Boudreau then yelled at him, grabbed him in a choke hold, and struck him on the head.  Thereafter, Officers Boudreau and Halloran left the room and returned approximately an hour later with a Cook County Assistant State's Attorney and a written statement for Watkins to sign.  At some point, the Assistant State's Attorney told Watkins what the statement said, and Watkins testified that this written statement was not what Watkins had told Defendant Officers Boudreau and Halloran.  In addition, Watkins testified that while he was trying to read the statement, Officer Boudreau grabbed him by the neck and forced him to sign the statement.

Based on Watkins' testimony, Defendant Officers' conduct is close enough in time to their interrogation of Hill because it happened approximately two months before Hill's interrogation.  *See United States v. Lee,* 558 F.3d 638, 647 (7th Cir. 2009) (two-year time frame close enough to be relevant to matter at issue).  Further, Watkins' interrogation involved similar

9

threats by Defendant Officers Halloran and Boudreau. Also, like Hill, Watkins maintains that Officer Boudreau physically abused him, yet Officer Halloran did not. In addition, Watkins' testimony is sufficient evidence to support a finding that Defendant Officers committed this similar act. *See, e.g., United States v. Ross,* 510 F.3d 702, 713 (7th Cir. 2007) (co-conspirator's testimony satisfied third Rule 404(b) factor); *see also Lee,* 558 F.3d at 647 (first-hand testimony sufficiently satisfied third Rule 404(b) factor). Defendants' argument that the physical threats and abuse were somewhat different in Watkins' situation than Hill's, namely, that Defendant Officer Boudreau slapped and punched Hill instead of putting him in a choke hold, is a distinction without a difference and does not establish that the incidents were dissimilar for Rule 404(b) purposes. *See Foster,* ___ F.3d ___, 2011 WL 2909455, at *7 (comparison of other bad acts need not be unduly rigid); *United States v. Vargas,* 552 F.3d 550, 555 (7th Cir. 2008) (prior act need not be duplicate of conduct at issue).

Finally, Defendants' argument that other acts that occurred before Hill's coerced confession are inadmissible is misplaced. *See United States v. Anifowoshe,* 307 F.3d 643, 646-47 (7th Cir. 2002) ("by its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts"); *United States v. Brown,* 31 F.3d 484, 492 (7th Cir. 1994) (Under Rule 404(b), "trial courts may admit evidence of prior or subsequent bad acts"). In fact, the majority of other acts evidence under Rule 404(b) involves prior, not subsequent, bad acts. *See, e.g., United States v. Ciesiolka,* 614 F.3d 347, 355 (7th Cir. 2010); *United States v. Harris,* 587 F.3d 861, 864 (7th Cir. 2009). The Court thus denies Defendant Officers' Rule 404(b) motion as to Watkins. Hill may introduce Watkins' testimony as proof of Defendant Officers' plan and preparation. *See Wilson,* 6 F.3d at 1238.

## B.    Curtis Milsap

Next, Hill seeks to introduce evidence concerning other police officers who allegedly coerced Curtis Milsap's confession based on the officers' similar methods of interrogation. Hill admits, however, that neither Officer Boudreau nor Halloran had any involvement in Milsap's interrogation. Because Milsap's interrogation did not involve either of the officers in this case and there is no pending claim against the City pursuant to *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the evidence surrounding Milsap's confession is not relevant under the circumstances. *See* Fed.R.Evid. 401; *see also Foster, ___ F.3d ___*, 2011 WL 2909455, at *7 (comparison of other acts concerns relevancy of 404(b) evidence). In other words, actions taken by these other officers are not relevant to Defendant Officer Boudreau's or Halloran's plan and preparation. The Court therefore grants Defendants Officers' motion in this respect.

## C.    Tyrone Reyna

Hill also moves to introduce evidence of Tyrone Reyna's confession to the shooting death of Hector Olague. Defendant Officers Halloran and Boudreau, along with other police officers, interrogated Reyna – who was sixteen-years-old at the time of his interrogation – on February 11, 1993. At his deposition, Reyna testified that during his interrogation, Defendant Officer Halloran punched and kicked him and also handcuffed him to a chair and that Defendant Officer Boudreau smacked, punched, kicked and threatened him. He further testified that Defendant Officers drove him around to view evidence of the murder. When Reyna denied involvement in the murder, Defendant Officers beat him after which he gave a false statement implicating himself. Reyna admits that he signed the false confession not only because

Defendant Officers threatened him about his family and girlfriend, but also because Defendant Officers "smacked" him around. Also, like Hill, Reyna claims that he agreed to a false statement that Officer Boudreau created.

Defendant Officers' interaction with Reyna is close enough in time to their interrogation of Hill because it happened approximately eleven months after Hill's interrogation and confession. *See Lee,* 558 F.3d at 647. Further, Reyna's interrogation involved similar threats and abuse, including being handcuffed and beaten by the officers. Also, like Hill, Defendant Officers drove Reyna around to view the evidence in the case. Reyna's interrogation, however, differs from Hill's interrogation in the respect that other police officers besides Defendant Officers Boudreau and Halloran were involved. Further, Reyna alleges that Defendant Officer Halloran physically abused him, whereas Hill admits that Defendant Officer Halloran did not touch him. Because Hill concedes that Defendant Officer Halloran did not touch him, evidence that Officer Halloran physically abused Reyna is unfairly prejudicial. *See United States v. Zahursky,* 580 F.3d 515, 525 (7th Cir. 2009) ("Evidence is unfairly prejudicial only if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented.") (citation omitted). As such, the Court grants Defendants' motion regarding Reyna's interrogation as to Officer Halloran.

That being said, because Defendant Boudreau's conduct was sufficiently similar to his alleged conduct involving Hill, the Court denies Defendants' motion in this respect. Meanwhile, under the third Rule 404(b) requirement, Reyna's testimony is sufficient evidence to support a finding that Defendant Officer Boudreau committed this similar act. *See Lee,* 558 F.3d at 647; *Ross,* 510 F.3d at 713. Hill may only introduce Reyna's testimony with respect to his interaction

with Defendant Boudreau as proof of Defendant Boudreau's plan and preparation. *See Wilson*, 6 F.3d at 1238. Plaintiff is cautioned, however, that Reyna may not testify about any acts of physical abuse concerning Defendant Halloran.

### D.     Oscar Gomez

Next, Hill seeks to introduce evidence concerning Oscar Gomez's arrest for the shooting death of Richard Zielinski. More specifically, Gomez testified at his deposition that on April 24 or April 25, 1995, Defendant Officers Halloran and Boudreau picked him up for questioning. Defendant Officers placed Gomez in a room after which they and two other police officers questioned him regarding the Zielinski murder. Gomez repeatedly denied involvement in the murder, after which Defendant Officer Halloran became more aggressive and punched, kicked, and choked Gomez. According to Gomez, Defendant Officer Boudreau also choked him and punched him in the stomach. Thereafter, Defendant Officers Boudreau and Halloran showed Gomez photographs of the victim and crime scene and told him that he had murdered Zielinski. Gomez further testified that Officer Boudreau dictated Gomez's confession directly to the Cook County Assistant State's Attorney. In addition, Gomez testified that he was told that if he signed the confession to Zielinski's murder, he could leave.

Defendant Officers' interrogation of Gomez is close enough in time because it occurred approximately three years after Defendant Officers interrogated Hill. *See Ross,* 510 F.3d at 713 (prior bad acts occurring five and six years after incident not too remote). Also, Defendant Officer Boudreau's physical abuse is similar to his alleged abuse of Hill. That being said, like Reyna's interrogation, Gomez accuses Defendant Officer Halloran of physically abusing him, whereas Hill did not. Again, because Hill concedes that Defendant Officer Halloran did not

touch him, evidence that Officer Halloran physically abused Gomez is both irrelevant and unfairly prejudicial. *See United States v. Thompson,* 359 F.3d 470, 479 (7th Cir. 2004) ("Evidence is 'unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.'") (citation omitted). In other words, there is a real danger that evidence of Officer Halloran's interrogation of Gomez would induce the jury to decide this case based on Defendant Halloran's conduct in connection with Gomez – not Hill. *See United States v. Conner,* 583 F.3d 1011, 1025 (7th Cir. 2009). The Court therefore grants Defendant Officers' Rule 404(b) motion in this respect.

The Court, however, denies Defendants' motion regarding Gomez's interaction with Officer Boudreau because Gomez's allegations of Officer Boudreau's conduct during his interrogation are sufficiently similar to Hill's allegations, and thus fulfill Rule 404(b)'s second requirement. Also, Gomez's own testimony is sufficient evidence to support a jury finding that Defendant Officer Boudreau committed this similar act. *See Lee,* 558 F.3d at 647; *Ross,* 510 F.3d at 713. Hill may only offer Gomez's testimony concerning his interactions with Defendant Officer Boudreau during Gomez's interrogation as proof of Officer Boudreau's preparation and plan. *See Wilson*, 6 F.3d at 1238. Hill is admonished that Gomez many not testify to any physical abuse Defendant Halloran allegedly inflicted upon him.

### E.     Abel Quinones

Similarly, Chicago police officers picked up Abel Quinones for questioning concerning Zielinski's murder on April 25, 1995. After Quinones was at the police station, Defendant Officer Halloran grabbed him and pushed him into the wall and then told Quinones that he had

no rights.  According to Quinones' deposition testimony, three or four different detectives interrogated him besides Defendant Officer Halloran.  Quinones further testified that Defendant Officer Halloran grabbed his face and forced him to look at photographs of the victim.  In addition, Defendant Halloran prepared Quinones' statement and read it to him.  Further, Quinones testified that Defendant Boudreau – whom Quinones described as the shorter detective with a mustache – pulled him by the hair, grabbed him by the neck, and pinned him against the wall.  Quinones, like Hill, was questioned for over 24 hours.

Again, Defendants Officers' interrogation of Quinones is close enough in time to Hill's interrogation because it occurred approximately three years after Defendant Officers interrogated Hill.  *See Ross,* 510 F.3d at 713.  Quinones' deposition testimony that Defendant Officers and other officers physically abused and threatened him, however, is not sufficiently similar to Hill's testimony because Quinones maintains that Defendant Officer Halloran grabbed him and pushed him into the wall telling Quinones he had no rights.  Quinones also maintains that Officer Halloran grabbed his face and forced him to look at photographs of the victim and then made him sign a statement.  Meanwhile, Defendant Officer Boudreau's involvement was quite limited.  These facts are significantly different from Hill's allegations and are unfairly prejudicial in light of Hill's admission that Officer Halloran did not touch him.  *See Zahursky,* 580 F.3d at 525; *Thompson,* 359 F.3d at 479.  Given Officer Boudreau's limited involvement, the admission of such testimony against him would be unfairly prejudicial as well.  Accordingly, the Court grants Defendant Officers' Rule 404(b) motion as to Quinones' interrogation.

### F.     Arnold Day

Next, Hill asks to introduce evidence that Defendant Officer Boudreau and two other police officers coerced Arnold Day into confessing to the murder of Rafael Garcia that occurred on September 15, 1991 and the murder of Gerrod Erving that occurred on May 17, 1991.  In particular, police officers arrested Day on February 4, 1992 and transported him to the Area 3 police station.  At Area 3, a police officer handcuffed Day to the wall of the interrogation room. Thereafter, Defendant Officer Boudreau questioned Day and told him that a fellow gang member had given a statement that Day was involved in a murder.  When Day told Defendant Officer Boudreau and another police officer that he was not involved in the murder, the other police officer choked and threatened him.  Day gave a written statement implicating himself in the shooting murders of Erving and Garcia.  At his deposition, Day testified that Officer Boudreau coached him on what to say.  Day also testified that Defendant Officer Boudreau did not physically or verbally abuse him.

The facts surrounding Day's interrogation, although close in time to Hill's interrogation, are not similar enough to fulfill the second Rule 404(b) requirement under the circumstances. More specifically, Day admitted that Defendant Boudreau did not physically or verbally abuse or threaten him.  Moreover, other non-defendant officers were involved in Day's interrogation, but Defendant Halloran was not.  Although Day testified that Defendant Officer Boudreau coached him on what to say, this factor, alone, does not make the Day interrogation sufficiently similar under Rule 404(b) because Day's interrogation involved different circumstances and different police officers who allegedly coerced him into confessing to the murders.  Based on these differences, the Day incident is not sufficiently relevant to the Hill interrogation.  *See*

Fed.R.Evid. 401; *see also Foster,* ___ F.3d ___, 2011 WL 2909455, at *7 (comparison of other acts evidence concerns relevancy). In addition, because of the differences, there is an increased risk that this evidence would distract the jury from the central issue in this lawsuit – whether Defendant Officers coerced Hill's confession to the Morgan crimes. *See United States v. Alayeto,* 628 F.3d 917, 922 (7th Cir. 2010). Therefore, the Court grants Defendant Officers' Rule 404(b) motion as to Day's interrogation because it is not relevant to Defendant Officer Boudreau's or Halloran's plan and preparation in relation to their interrogation of Hill.

### G.     Enrique Valdez

Additional other bad acts evidence that Hill seeks to introduce involves Enrique Valdez's arrest and confession to two murders. On August 24, 1991, Chicago police officers arrested Valdez at his home because he had been identified as a murder suspect. Upon arriving at the police station, the police officers put Valdez in a room where Defendant Officer Boudreau was present. Valdez testified that during his interrogation, a police officer handcuffed him to the wall, beat him, punched him, and threw him to the ground. When Valdez denied involvement in the murder, a police officer continued to beat him. He also testified that once the other officer left the room, Defendant Officer Boudreau struck him on the right side of his ear and told him to stop giving his partner the runaround. Thereafter, Valdez gave his false statement due in part to the fear that Defendant Boudreau and the other police officer would continue to beat him.

Valdez's confession, which occurred approximately seven months before Hill's interrogation and confession, is close enough in time under the second Rule 404(b) factor. *See Lee,* 558 F.3d at 647; *Ross,* 510 F.3d at 713. That being said, Valdez's interrogation was not similar to Hill's interrogation in that Defendant Officer Halloran was not involved and other

17

police officers besides Defendant Officer Boudreau physically abused and threatened Valdez into giving a false statement. Also, Defendant Boudreau's alleged involvement in the physical abuse was limited and significantly less than the non-defendant officers. Because Defendant Halloran was not involved in Valdez's interrogation, this evidence is unfairly prejudicial to him because it may induce the jury to decide the case against him on an improper basis, namely, the conduct of others. *See United States v. Collins,* 604 F.3d 481, 487 (7th Cir. 2010) ("relevant evidence may be excluded if it is so unfairly prejudicial that it will cause the jury to decide the case on an improper basis rather than on the evidence"). The evidence of the other police officers' alleged misconduct is similarly prejudicial to Officer Boudreau because, in contrast to Hill's allegations, Defendant Officer Boudreau's involvement with Valdez was quite limited. The Court therefore grants Defendant Officers' Rule 404(b) motion as to Valdez's interrogation.

## H. Clayborn Smith

In addition, Hill seeks to introduce other bad acts evidence concerning Clayborn Smith's interrogation for the beating deaths of his grandfather and aunt. At his deposition, Smith testified that police officers arrested him on October 20, 1992. While the police officers transported Smith to the police station, Smith testified that Defendant Officers Boudreau, Halloran, and two other officers yelled at him and told him that they would beat him up if he did not talk about the murders. At the station, the police placed Smith in a room and Defendant Officer Halloran and another detective questioned him. During his interrogation, Smith was handcuffed to the wall. Smith testified that another police officer slapped him and grabbed him. He also testified that Defendant Halloran pushed his head between his knees and held him down while the other police officer punched him.

18

In contrast to Hill, Smith testified that Officer Halloran physically abused him and that Officer Boudreau did not physically abused him. Moreover, other police officers were involved in Smith's interrogation, including the unknown detective who threatened and physically abused Smith throughout his interrogation. As such, not only are the facts surrounding Smith's interrogation significantly different from Hill's allegations – because the unknown police detective repeatedly abused Smith – Defendant Officers Halloran and Boudreau would be unfairly prejudiced by this evidence because it could induce the jury to decide the case against Defendants on an improper basis, such as the unknown detective's conduct. *See Collins,* 604 F.3d at 487. Therefore, the Court grants Defendant Officers' in limine motion as to Smith's interrogation.

## I. Derrick Flewellen

Hill also seeks to introduce evidence of Derrick Flewellen's interrogation by Defendant Officer Boudreau and another Chicago police detective. According to Flewellen, on the night of June 14, 1995, he was at the hospital being treated for a foot injury when two police officers approached him to answer some questions. The police officers took Flewellen to the police station after which Defendant Officer Boudreau began questioning him about the two murders. Flewellen testified that when he said that he did not know anything about the murders, Defendant Officer Boudreau punched him in the head. Later, Defendant Officer Boudreau grabbed Flewellen by the neck, slammed him into the wall, punched him, and then threw him down. The other officer present slammed a metal chair on Flewellen's injured foot. Another police officer threatened Flewellen that he would charge his girlfriend as an accomplice to the murders if he did not confess. Thereafter, Defendant Officer Boudreau gave Flewellen a

statement to sign.  When Flewellen refused to sign the statement, Defendant Boudreau punched him in the jaw.  Flewellen signed the statement implicating himself in the murder of Sherry Hunt.  After additional threats and abuse, Flewellen signed a statement implicating himself in the murder of Lovie Ford.  Flewellen maintains that the police wrote out his statements for him and that he signed the statements so the officers would stop beating him up.

Although Defendant Officer Halloran was not involved in Flewellen's interrogation, Defendant Officer Boudreau's conduct when interrogating Flewellen was sufficiently similar to Hill's allegations under the second prong of the Rule 404(b) requirements.  Also, Flewellen's testimony is sufficient evidence to support a jury finding that Defendant Officer Boudreau committed this similar act.  *See Lee,* 558 F.3d at 647; *Ross,* 510 F.3d at 713.  Thus, Hill may offer Flewellen's testimony as to Flewellen's interactions with Defendant Officer Boudreau during his interrogation as proof of Officer Boudreau's preparation and plan.  *See Wilson*, 6 F.3d at 1238.  Hill may not, however, elicit testimony of any physical abuse the other non-defendant officers allegedly exerted against Flewellen.

### J.     Robert Wilson

Five years after Hill's arrest, police officers arrested Robert Wilson at a bus stop because he matched a description of an individual who stabbed a woman at that bus stop the day before. At his deposition, Wilson testified that detectives placed him in a room and asked him where he was the day before.  When the police patted Wilson down, he reached into his pocket to pull out his gun.  The detectives then drew their weapons after which one detective hit Wilson in the head.  Thereafter, Defendant Officer Halloran verbally abused Wilson.  Other police officers slapped him and denied him medication during this time.

The police then took Wilson to lock-up where he stayed for approximately eight hours. After he was in a line-up, a Chicago police detective told Wilson that the victim had identified him. Two detectives then met with Wilson in an interview room where one of the detectives accused Wilson of assault and hit him in the head. This detective also verbally threatened Wilson to confess. Wilson then met with a Cook County Assistant State's Attorney who told him that if he did not confess, the detectives would beat him. Wilson agreed to give a statement because he was afraid for his life and was sick. The Assistant State's Attorney described the events of the night of the crime and Wilson then gave his statement based on these suggestions.

The facts of Wilson's interrogation do not survive the similarity test under Rule 404(b). Defendant Halloran's role in the alleged coerced confession is minimal at best, namely, that prior to Wilson being placed in lockup, Defendant Officer Halloran and other officers verbally abused him. Moreover, there is no evidence in the record that Defendant Officer Halloran was in the interview room later when Wilson gave his statement. Furthermore, there is no indication in the record that Defendant Officer Boudreau was involved in Wilson's interrogation in the first instance. Without more, the Court would be hard-pressed to conclude that the facts surrounding Wilson's statements are sufficiently similar to Hill's interrogation. In addition, due to the differences between the Wilson and Hill circumstances, there is an increased risk that this evidence would distract the jury from the central issue in this lawsuit – whether Defendants coerced Hill's confession to the Morgan crimes. *See Alayeto,* 628 F.3d at 922. The Court therefore grants Defendants' motion in limine as to Wilson's interrogation.

**III.    Danger of Unfair Prejudice**

The last Rule 404(b) factor requires the Court to determine whether the probative value of the other bad acts evidence is substantially outweighed by the danger of unfair prejudice.  As discussed, evidence concerning both Defendant Officers' interrogation of Watkins is highly probative only to Defendant Officers' plan and preparation in relation to their interrogation of Hill.  *See Wilson,* 6 F.3d at 1238.  Also, evidence of Defendant Officer Boudreau's interrogation of Reyna, Gomez, and Flewellen is relevant and highly probative only to Defendant Boudreau's plan and preparation.  And, it is well-settled that the "more probative the evidence, the more the court will tolerate some risk of prejudice."  *Vargas,* 552 F.3d at 557 (citation omitted).  The Court therefore denies Defendant Officers' motion as to Watkins, and grants in part and denies in part as to Reyna, Gomez, and Flewellen.  The parties must submit an agreed upon limiting jury instruction concerning this Rule 404(b) evidence by no later than September 6, 2011.  In addition, Hill must confine this other acts evidence consistent with this opinion in order to avoid prejudice, jury confusion, and a mini-trial of the individuals' overall interrogations and investigations.  *See Rogers,* 587 F.3d at 822.

As to the other bad acts evidence regarding the other interrogations, what little (if any) probative value such evidence has is substantially outweighed by the real danger that the jury would view these acts as improper propensity evidence, namely, that if Defendant Officers physically and verbally abused these other murder suspects to coerce their confessions, they did the same to Hill.  *See United States v. Tanner,* 628 F.3d 890, 904 (7th Cir. 2010) ("Rule 404(b) forbids the use of a person's prior bad acts only to show that same person's later action in conformity therewith.").  In other words, this other bad acts evidence is susceptible to misuse

because it could lead the jury to decide that Defendant Officers have the propensity to coerce confessions. *See United States v. Powell,* ___ F.3d ___, 2011 WL 2712969, at *3 (7th Cir. July 13, 2011).

Finally, the other Rule 404(b) evidence has the potential to confuse or mislead the jury and cause undue delay, especially because introduction of such evidence would consist of multiple mini-trials of the facts surrounding these interrogations. *See Manuel v. City of Chicago,* 335 F.3d 592, 597 (7th Cir. 2003). Indeed, the other acts evidence would most likely distract the jury from the central issue in this lawsuit, namely, whether Defendant Officers coerced Hill's confession to the Morgan crimes. *See Alayeto,* 628 F.3d at 922. As such, the Court grants Defendant Officers Rule 404(b) motion in part. *See Lewis v. City of Chicago Police Dept.,* 590 F.3d 427, 441 (7th Cir. 2009) ("district court is afforded a special degree of deference when deciding whether evidence is unfairly prejudicial under Rule 403").

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendant Officers' motion to bar evidence of ten other acts brought pursuant to Federal Rule of Evidence 404(b).

**DATED:** August 30, 2011

ENTERED

_____
**AMY J. ST. EVE**
**United States District Judge**